GEORGE W. BELDEN *vs.* PHILIP HUGO, SHERIFF.

Third Judicial District, New Haven, June Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The so-called Probation Law of this State (Public Acts of 1905, chapter 142, as amended in § 4 by chapter 106 of the Public Acts of 1911) provides (§ 4) that in cases within its jurisdiction, any criminal court, or the presiding judge after the adjournment of the term, "may adjourn the case or suspend sentence and commit the accused to the custody of a probation officer . . . for such time, not exceeding one year, as the court may fix"; and § 5 provides that if the probationer fails to observe the rules prescribed for his conduct, he may be brought before the court and the court " may

Belden v. Hugo.

revoke the suspension of the execution of his sentence, whereupon his sentence shall be in full force and effect, or the court may continue the suspension." Upon a writ of habeas corpus to determine the legality of the plaintiff's imprisonment, it was *held:*—

1. That although somewhat inartificially framed, the Act conferred upon the courts the power to either suspend sentence, that is, not to award any punishment, or, having pronounced sentence, to stay or suspend its execution.

2. That the purpose or aim of the law in authorizing a commitment to the custody of a probation officer, was not the punishment of the probationer, but his moral improvement and reformation, as a result of which the punishment might become unnecessary and its stigma be avoided.

3. That inasmuch as the probation commitment was nonpenal in character, and in no sense a substitute or alternative for a commitment to jail, the duration of the former was not to be counted in reduction of, or treated as in anywise affecting, the term or period of the jail sentence, when that subsequently became operative upon a revocation of the stay.

4. That the stay of execution of sentence, authorized by the Act, was in no true sense an exercise of the pardoning power, but merely one of the modifying incidents or conditions attached to and forming part of the punishment which the legislature saw fit to prescribe.

5. That it was competent for the legislature to give control over their own judgments to courts of criminal jurisdiction for one year, so that within such period they might be modified or erased; and that this, at the most, was all that the stays authorized by the Act amounted to.

Whether it is competent for the General Assembly to confer upon the courts a power to pardon, *quære.*

Argued June 5th—decided July 17th, 1914.

WRIT OF HABEAS CORPUS to determine the legality of the imprisonment of the petitioner, issued and reserved by the *Hon. Earnest C. Simpson,* a judge of the Court of Common Pleas in New Haven County, upon the facts alleged in the pleadings, for the advice of this court. *Judgment advised for the respondent.*

The petitioner, having been convicted of the crime of abortion at the April term of the Superior Court in New Haven county, was, on April 24th, 1913, sentenced to be imprisoned in the common jail in New Haven for and during the term of one year, and to pay a fine of

$400, together with the costs of prosecution, and to stand committed to jail until the sentence be fully complied with. He thereupon paid the fine and costs, and the court ordered that execution of that part of the sentence which directed that the petitioner be imprisoned in jail for the term of one year be suspended, and that the petitioner be committed to the custody of a probation officer designated, for the term of one year and until further order of court, and ordered the case continued on the docket. A mittimus was then issued committing the petitioner to the care and custody of the probation officer as stated.

The case came by continuance to the January term, 1914, when the petitioner was brought before the court by the probation officer on the 14th of January, 1914. At that time the court revoked the order of suspension recited, and ordered that the accused be committed to jail to serve the term of his sentence, the same to begin on that day. A mittimus was thereupon issued to the respondent to keep him in jail for the term of one year from January 14th, 1914. These proceedings were begun April 27th, 1914, more than one year after the imposition of the sentence upon the petitioner.

*Samuel E. Hoyt*, for the petitioner.

*Arnon A. Alling*, State's Attorney, and *Walter M. Pickett*, Assistant State's Attorney, for the respondent.

PRENTICE, C. J. Section 4 of chapter 142 of the Public Acts of 1905, p. 350, as subsequently amended, provides that any criminal court, in any case within its jurisdiction, or the judge who held such court upon a hearing after the adjournment of the term, may adjourn the case or suspend sentence and commit the accused to the custody of a probation officer, either regularly ap-

pointed or specially designated, for such time, not exceeding one year, as might be fixed.  Public Acts of 1911, p. 1362, Chap. 106, § 1.  The plaintiff's conviction, sentence to imprisonment for one year and payment of fine, immediately paid, and commitment to the custody of the probation officer for the term of one year, after an order of suspension of execution of the sentence of imprisonment had been entered, took place while this statute was in effect.

Although the provision referred to is inartificially framed, it is apparent from the context, and especially that contained in § 5, that, interpreted according to its true meaning and intent, it confers upon the courts power to either suspend sentence in the strict meaning of that phrase, which implies that sentence is not pronounced, or to suspend the execution of a sentence pronounced.  This, counsel for the petitioner does not question.  He does not complain of any irregularity in the judicial proceedings.  His sole contention is that the judgment of the court had been satisfied, before the commencement of these proceedings, by the passage of one year from the date of imposition of sentence, during all of which period the petitioner was either in the custody of the probation officer or in jail, so that his client was and is entitled to his enlargement.  The State's Attorney, representing the respondent, insists that the plaintiff will not have satisfied the sentence of imprisonment imposed upon him until one year from the time that the order of suspension of execution was revoked and the mittimus to the respondent issued, and the petitioner shall have spent one year thereafter in jail.

These conflicting claims arise from a fundamental difference of view as to the meaning and intent of our probation law, of which the section referred to forms a part.  In the view of the petitioner, the secondary

commitment to the custody of the probation officer provided for by the statute, where sentence to imprisonment is pronounced, is a substitute or alternative for the primary commitment to jail or to prison embodied in the sentence, so that the period of the former counts in reckoning the period of the latter. The view of the State's Attorney is that the probation period stands wholly unrelated to a satisfaction of the sentence as such, and can have no effect upon the sentence save as it may, if its purpose is fulfilled by reform of life, lead to an exemption from its operation.

One of the difficulties with the plaintiff's view is that it ignores the purpose of the probation commitment, and mistakes its true character. It is not ordered for the purpose of punishment for the wrong for which there has been a conviction, or for general wrongdoing. Its aim is reformatory and not punitive. It is to bring one who has fallen into evil ways under oversight and influences which may lead him to a better living. The end sought is the good of the individual wrongdoer, and not his punishment. Underlying the act of commitment is the hope that it may prove that punishment will be unnecessary, and that its stigma may be avoided. A sentence partakes of an essentially different character. It is the judgment of the court formally pronounced "awarding the punishment to be inflicted." Black's Law Dictionary (2d Ed.) 1071. It deals out punishment, and one of its underlying aims is to cause its subject to suffer for the wrong he has done.

The suggestion that the probation commitment partakes of a penal character because it involves an award of custody, a restraint of liberty of conduct by the necessity of observance of prescribed rules and regulations, and the creation of a right and power of supervision in another, is one which overlooks the end sought and the fundamental character of the limitations upon

personal independence which are involved. Restraints upon individual freedom of action are not by any means all penal. The youth at school is under restraint. He comes under the duty of obedience to the rules prescribed for his well being and wholesome development. He is subject to the supervision of a superior, and yet his school life is not one of punishment. There are limitations upon the right of individual freedom of action born of social conditions which are constantly recognized. Their character is not penal where the purpose of their imposition is not punitory.

The nonpenal character of the probation commitment under our law is plainly recognized in its provisions wherein a suspension of the execution of the sentence imposed is provided for where a commitment to the custody of a probation officer is made, and a revocation of the suspension provided for when imprisonment in conformity to the sentence is to begin. The sentence, to use the words of the statute, does not come to have full force and effect until this revocation is made. A sentence unexecuted entails no punishment upon the offender. It is only a judicial pronouncement. It is the carrying into effect of the sentence, by process providing for its execution, which results in punishment. A suspension of execution necessarily involves a suspension of the penal consequences of the judgment. Suspension is altogether inconsistent with operation. It implies a stay—a cessation of operation. The position of a person under sentence, but committed to the care of a probation officer, as described in the language of the statute, involves the conception of a ceasing of the operation of the sentence, and not operation of the sentence proceeding simultaneously with or by means of the probation process. The statute plainly contemplates nothing of the latter sort. It as plainly contemplates that proceedings to secure punishment shall not

be in force during the period when the probation process is in operation, and that execution of sentence will not run unless and until that process shall have failed to accomplish the desired results.

It is suggestive of the law's conception of the relation of a probationer to the probation officer, that in § 9 of the statute it is provided that the former be considered as the latter's ward. The officer is thus represented as standing, in the eye of the law, in the position of a guardian and not that of a keeper.

The appellant, in support of his prayer for release, claims that the action of the court in committing him to the care of the probation officer, if the period of such commitment was not to be reckoned as in satisfaction *pro tanto* of the sentence of imprisonment, was in excess of its authority as being in its essence an exercise of the pardoning power. In aid of this contention we are referred to several cases, of which *State* v. *Sturgis*, 110 Me. 96, 85 Atl. 474, is a good example, wherein it has been held, in substance, that courts are powerless after sentence to interfere with the execution of the sentence by way of its commutation, the exoneration of the prisoner therefrom, or modification of its terms. These cases all dealt with the inherent power of courts in the absence of enabling legislation. Here the Superior Court acted in conformity with legislation which expressly confided to it the authority it exercised. The question presented to us is, therefore, in no sense that passed upon in the cases referred to. It does not concern the inherent power of the Superior Court, but its power under the statute. The terms of the statute are, as we have seen, adequate to justify the action taken. If that action was unlawful, it could be for no other cause than that the General Assembly was powerless to legislate as it did. The question for our determination is thus carried back to the statute, and con-

cerns the competency of the General Assembly to enact it.

In passing upon this question it is important that we gain a correct conception of the character of that which the statute authorizes the courts to do in the matter of stays of execution. In no true sense is it an exercise of the pardoning power. The provisions of the statute, like those authorizing releases from imprisonment on parole, merely prescribe conditions attaching to the punishment authorized and inflicted. The General Assembly defines the punishments which may be imposed, and it may gather around those punishments such incidents or conditions as it may deem wise. Statutes which prescribe these incidents or conditions, although general in their application, are dealing with the punishment, and their provisions enter into and form a part of it. So it is that every sentence to imprisonment for a term carries with it and has incorporated into it by necessary implication those provisions whose operation may result in a modification of its letter. When some such provision results in a release on parole, or stay of execution with a probation commitment, that result does not have its source in an exercise of the pardoning power. It comes in the due course of the operation of the sentence under the provisions of law which prescribe what it may be and its incidents. In this view of the matter there can be no doubt as to the competency of the General Assembly to legislate as it did in the probation statute, and to attach to or incorporate into punishments authorized to be imposed the conditions it embodies.

We need not stop here. Let it be assumed that there exists, in a stay of execution which may be made permanent, the essence of a remission of sentence. We are then unable to discover good reason, constitutional or otherwise, why courts of criminal jurisdiction

Belden *v.* Hugo.

may not, by legislation, be given control over their own judgments for the period of one year, so that within that period they may be modified or erased. That, at most, is all that the stays provided for in the statute amount to. The power exercised, even in that aspect of it, does not constitute a pardon or commutation. It is in effect only a change of judgment, and for that reason a radically different thing from a pardon or commutation, which import that the sentence stands while the sentenced person is relieved from its operation upon him. The gist of that which the statute authorizes is that the pronouncement of the court may be changed, not that a way of escape from it is provided.

We have no occasion to consider the further question, suggested by the argument in favor of the plaintiff, whether it is not competent for the General Assembly to confer upon the courts a power of pardon.

We are of the opinion that the period during which the petitioner was under commitment to the custody of the probation officer is not to be counted as time during which he was undergoing the punishment imposed in the sentence. Execution of the sentence did not come into operation until revocation of the suspension of execution was made on January 14th, 1914, and the year for which he was sentenced to imprisonment began to run from that date. It follows that he has not served out his sentence, and is not entitled to enlargement from the respondent's custody under the mittimus in his hands.

*Judge Simpson* is advised to render judgment remanding the petitioner to the custody of the respondent.

Costs in this court will be taxed in favor of the respondent.

In this opinion THAYER and WHEELER, Js., concurred.

Belden *v.* Hugo.

BEACH, J. (dissenting). This is not a case where the imposition of sentence was suspended, so as to create an interregnum between the conviction and the final judgment of the court. In this case final judgment and sentence of fine and imprisonment in the common jail for one year was pronounced on April 24th, 1913. The fine was paid, and, except for the Probation Act of 1905 as amended, nothing would have remained except to do execution of the jail sentence. This statute authorizes the criminal courts to commit a convicted criminal to the charge of a probation officer upon conditions which contemplate his absolute release in case he observes the terms of his probation and conducts himself to the satisfaction of the court. The Act has been practically construed as authorizing the court to commit on probation either before or after the sentence. If done before the imposition of the sentence which would otherwise have been required by law, the probation commitment is in the nature of an interlocutory order specially authorized by the Act, and there is no logical or constitutional reason why such an order may not thereafter be revoked and a final judgment entered. But when the court first pronounces a final judgment and sentence including imprisonment, and then suspends the execution of the jail sentence and commits the convicted and sentenced criminal to a probation officer on conditions which contemplate that, at the pleasure of the court, the original sentence may never be enforced at all, very important questions arise as to the character of such an order of commitment. Is it an authorized alternative execution of the sentence? Or is it, as the opinion holds, no execution at all, because not a punishment? And if the statute purports to authorize the criminal courts to let a convicted and sentenced criminal go free of any execution of his sentence upon condition of

his good behavior while in the custody of a probation officer, is it not then in violation of Article Second of the Constitution of Connecticut, as an attempt to confer the pardoning power on the courts?

I think the probation commitment is in alternative execution of the jail sentence already pronounced, and is a punishment for the offense committed. It is founded on the conviction, and in practice is evidenced by a formal mittimus. From the standpoint of the probationer there can be no question but that it is penal in character. He is under the surveillance and in the custody of an officer of the law, under such regulations as the court sees fit to impose. He is required to observe these regulations, report to the officer as directed, and to maintain a correct life, being all the while subject to arrest without warrant for failure to do so. His description, sufficient for identification, and his history while under probation, are part of the records of the criminal court in which he was convicted, and of the Connecticut prison association. Public Acts of 1905, p. 350, Chap. 142; Public Acts of 1909, p. 1086, Chap. 161. This amounts to a restraint of personal liberty imposed by the judgment of a court for the commission of a criminal offense. It is a "penalty for transgressing the law," which is our Connecticut definition of punishment in criminal law. *State* v. *Smith*, 7 Conn. 428, 431.

It does not quite meet the issue to point out that the purpose of the Act is the good of the wrongdoer and not his punishment; as if these two purposes were inconsistent. They are not inconsistent. On the contrary, they are two of the five main objects of penal justice as laid down by Bentham: namely, example, reformation, incapacitation, satisfaction to the person injured, and economy to the State. Modern penology emphasizes the second and fifth of these purposes, and

Belden *v.* Hugo.

the Act in question aims at these results in the same
general way as the indeterminate sentence: the Act
authorizing the commitment, of persons convicted
of certain State prison offenses, to the State reforma-
tory, and the parole of prisoners in these institutions
after serving a minimum term.   In particular it en-
ables the courts to discriminate between degrees of
criminality which cannot be distinguished by statute,
and to place a convicted criminal, either before or after
sentence, in a situation not very different from that
of a convict on parole.   If the probation commitment
comes after a jail sentence, it must necessarily operate
as a stay of execution conditional on the good behavior
of the convict.   But it is not, as the court treats it, a
complete stay of all execution of the sentence, for it is
accompanied by the imposition of a less severe restraint
of liberty.   The element of reformation is emphasized,
and those of example and incapacitation are minimized,
though still present, and the result is a punishment
exhibiting every essential purpose of penal justice.
On this ground alone, I think that the Act, so far as
it permits a convicted offender to be committed to a
probation officer after sentence to jail, should be con-
strued as authorizing an alternative execution of the
sentence during good behavior, and not as authorizing
a complete and possibly permanent stay of execution
of such sentence.

Such a construction has, moreover, the advantage
of being consistent with the policy of our criminal law
as evidenced by other statutes relating to the same
general subject-matter.   The situation of a proba-
tioner under an unexpired sentence of imprisonment
in jail, is not unlike that of a paroled convict, although
the paroled convict is less restrained of his liberty, for
he is released, conditionally, on his own recognizance,
while the probationer remains in charge of an officer

of the law. Yet our statutes treat the sentences of paroled convicts as still in process of alternative execution while they are out on parole, and provide that, if returned to prison for violation of parole, they may be imprisoned for the unexpired terms only of their sentences. General Statutes, § 1539; Public Acts of 1909, p. 1087, Chap. 162, § 12.

I also think that the construction adopted by the opinion would make the statute unconstitutional as purporting to authorize the criminal courts, after final judgment and sentence, to completely suspend the execution of the sentence with a view to never enforcing it, in case the criminal observed the conditions of his probation. My views on this branch of the case cannot be better expressed than in the following quotation from a recent decision of the Supreme Judicial Court of Maine: "Again, it is a well recognized principle, that after a sentence has been imposed the court has no authority to relieve the convict from its execution. The authorities draw a clear distinction between the suspension of the imposition of a sentence and the indefinite suspension or remission of its enforcement. There is a conflict of authority as to the power of the court after a conviction to indefinitely postpone the imposition of the punishment prescribed by law, but however the courts may differ as to such power, it is well established that the court cannot, after the judgment in a criminal case is rendered and the sentence pronounced, indefinitely postpone the execution of that sentence, or commute the punishment and release the prisoner therefrom in whole or in part. Of course it is not to be understood that the court has not the power to temporarily postpone the execution of its sentence pending an appeal and other proceedings to obtain a new trial or review of the judgment, and in cases where cumulative sentences are imposed, and perhaps in

some cases of great necessity and emergency. And the power of the court to correct errors in its judgment, and to change its sentence, during the term at which it is imposed and before its execution has begun, is another and different matter. The act which the authorities hold that the court has not the power to do, is . . . the act done for the purpose of exonerating the convict, in whole or in part, from the final and lawful judgment and sentence of the law which has been imposed upon him. That is the power to pardon, to commute penalties, to relieve from the sentence of the law imposed as punishments for offenses against the State, which power has not been given to the courts, but confided exclusively to the Governor of the State, with the advice and consent of the council." *State* v. *Sturgis*, 110 Me. 96, 100, 85 Atl. 474.

See, also, *Tuttle* v. *Lang*, 100 Me. 123, 60 Atl. 892; *Ex parte Clendenning*, 22 Okl. 108, 97 Pac. 650, 19 L. R. A. (N. S.) 1041; *In re Webb*, 89 Wis. 354, 62 N. W. 177, 27 L. R. A. 356; *In re Strickler*, 51 Kan. 700, 33 Pac. 620.

In all of these cases the sentence of imprisonment was first pronounced, and then its execution suspended either with or without a time limit and upon a condition of good behavior such that it might be the pleasure of the court never to direct execution, so that the suspension had the practical effect of a conditional pardon. In every case it was held that such an order of suspension was void as beyond the power of the court, that the period of imprisonment commenced in contemplation of law at the date of the sentence, and that the prisoner could not be detained after it expired. It seems clear that if our Probation Act must be construed as authorizing our criminal courts to grant conditional pardons, by completely suspending execution of jail sentences, upon terms such that the con-

Belden *v.* Hugo.

vict may go free in case he observes the conditions of his probation, then the Act is unconstitutional under the doctrine of *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576, 37 Atl. 1080, 38 id. 708, and many other cases, as attempting to delegate to the courts a non-judicial function. The pardoning power is historically, and in principle, the antithesis of legal justice. It is an act of grace, and a negation of the sentence of the law. "The pardoning power is essentially of a political nature. Judicial officers are to do justice. Mercy is an act of policy or grace." Baldwin, American Judiciary, 52.

For the reasons indicated, I think that the commitment to the probation officer after jail sentence is in the nature of an execution of the original sentence by a mitigated punishment, and that the statute cannot be otherwise construed consistently with our Constitution.

I agree that the legislature may by statute annex implied conditions to the penal sentences of the courts; if so, the sentence in this case may be in effect, though not in form, a sentence to one year in jail, or to commitment to the probation officer, if the court should so order. But there must be some relation of time between the jail sentence and the commitment. Evidently the legislature did not intend that one sentenced to jail for thirty days should be committed to a probation officer for eleven months and then sentenced to jail for thirty days, or that one sentenced to jail for a year should be committed to a probation officer for one month only and then set free. Yet if the time spent in the custody of the probation officer is not in execution of the original sentence, either of these results is permissible.

In this opinion RORABACK, J., concurred.