STATE OF MAINE
*vs.*
FREDERICK BLANCHARD

Aroostook.   Opinion, March 9, 1960.

*Ferris Freme, County Attorney,*
*Harold Stewart, Ass't County Attorney,* for the State.

*Adolphus S. Crawford,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, SULLIVAN, DUBORD, SIDDALL, JJ. TAPLEY, J., did not sit.

DUBORD, J. This case is before us on report under the provisions of Section 15, Chapter 103, R. S., 1954.

According to an agreed statement of facts, one Frederick Blanchard, hereinafter referred to as the respondent was indicted at the April 1957 Term of the Superior Court within and for the County of Aroostook, upon the charge of assault with intent to kill and murder. After commitment to the Bangor State Hospital for observation and report as to his sanity, the respondent was returned to the aforesaid Superior Court for trial at its September 1957 Term. At this term, a nolle prosequi was entered to that part of the indictment which charged intent to kill and murder.

At this September 1957 Term, upon arraignment, the respondent pleaded guilty to the indictment in its amended form and was sentenced to be imprisoned at hard labor for not less than two nor more than four years in the state prison; execution of this sentence was suspended, and the respondent was placed on probation under the provisions of Chapter 387, P. L., 1957, for a term of four years, conditioned on his entering Veterans' Facility at Togus, forthwith, and accepting such treatment for such period of time as said Veterans' Facility should recommend, and that the respondent further report to the probation officer forthwith and on the first day of each month during said term.

On the 15th calendar day of said September 1957 Term, being the 28th day of September, 1957, the respondent was in court present with counsel, whereupon the aforesaid

sentence of imprisonment was revoked by the same presiding justice who had pronounced it; the said presiding justice ordered that the nolle prosequi hereinbefore referred to should stand without prejudice; that the respondent be permitted to withdraw his plea of guilty without prejudice; thereupon, without further plea by the respondent, the presiding justice ordered that the case be marked "continued;" and bail was set by the presiding justice and furnished by the respondent for his appearance at the next Term of Court in said County of Aroostook, when criminal cases would be in order for trial, namely, the November 1957 Term of said Court.

At the November 1957 Term of said Court, counsel for the respondent withdrew. Respondent was present in court in person, but without counsel, and was notified by the justice presiding at said Term, who was not the same justice who had presided at the September Term, that the original probation was in full force; and thereupon, the case was ordered by the presiding justice to stand continued on the docket.

At the ensuing April, September and November 1958 Terms of the aforesaid Court, when criminal cases were in order for trial, the case against the respondent was still further continued upon order of the court.

On January 27, 1959, a complaint on the part of the probation officer, was filed in the aforesaid Superior Court, then in vacation, addressed to the resident justice of said court, charging that the respondent had violated the terms of the probation imposed upon him by the presiding justice of the Superior Court at the September 1957 Term. Upon this complaint, a capias was ordered to be issued upon which the respondent was arrested on February 8, 1959 and confined in Aroostook County Jail until March 21, 1959, when he obtained his release on bail for his appearance at the

April 1959 Term of said Superior Court to be held in Houlton.

To the allegations contained in the complaint for violation of probation, the respondent filed pleadings in which he set forth the contention that the presiding justice at the September 1957 Term was without authority to suspend the execution of the sentence, for the reason that this action on his part was an exercise of the pardoning power specifically reposed by the Constitution in the executive department of the State. In other words, the respondent attacked the constitutionality of Section 6, Chapter 387, P. L., 1957, as being in contravention of Article III, Sections 1 and 2, and of Article V, Part First, Sections 1 and 11 of the Constitution of Maine. Respondent further contended in his pleadings that if the provisions of the probation statute did not infringe upon the Constitution, that the probation decreed upon the original sentence was annulled, when the presiding justice, at the same Term of Court at which the sentence was pronounced and probation imposed, revoked the sentence and permitted the respondent to withdraw his plea of guilty, and ordered the case continued without further plea.

To these contentions of the respondent, the State countered that the provisions of Chapter 387, P. L., 1957, insofar as they relate to the suspension of execution of a sentence and the placing of a convict upon probation were constitutional; and that the attempted revocation of the sentence by the presiding justice at the September 1957 Term was without authority, since it was not made before adjournment of the same term at which it was pronounced; and because, before such revocation, the respondent had already begun the execution of his sentence having come under the control and custody of a probation officer, who the State says is an officer of the executive branch of the government.

After a hearing on the complaint charging violation of probation, the presiding justice ruled that the provisions of Chapter 387, P. L., 1957, relating to suspension of execution of a sentence and imposition of probation, was not in violation of the Constitution of Maine; that the presiding justice at the September 1957 Term was without authority to revoke the sentence previously pronounced; that there had been a violation of the terms of the probation; and that the respondent should abide the terms of the original sentence of imprisonment.

The execution of the sentence was stayed pending a decision of the Law Court upon the issues presented.

According to the agreed statement of facts, the case comes before us for determination on the following issues:

"(1)   The constitutional validity of that part of Chapter 387 of the Public Laws of Maine, 1957, which permits the court to suspend execution of the sentence, and to place on probation, a person convicted of a criminal offense.

"(2)   Under the agreed statement of facts and the records herein presented, did the presiding justice, at the September 1957 term of said Superior Court, have authority to revoke the sentence and probation that he had previously pronounced and imposed?"

We think it is of importance to first dispose of the question as to whether or not the action of the presiding justice at the September 1957 Term took place at the same term of court at which the original sentence was imposed. A determination of this issue requires interpretation of subsection II, Section 11, R. S., 1954, relating to the September Term of the Superior Court in Aroostook County. The statute provides that there shall be a term of court "at Houlton on the 2nd Tuesday of September for criminal business and by adjournment at Caribou for civil business,".

The docket entries show that court was held in Houlton from September 10, 1957 to September 20, 1957 for the disposal of criminal business. The original sentence was imposed upon the respondent upon the 8th day of the Term, viz., September 19, 1957, or while court was in session in Houlton. The docket entries further show that the session of court was adjourned to Caribou where civil business was conducted from September 23, 1957 to September 28, 1957. On September 28, 1957, court which was then convened in Caribou adjourned to Houlton for criminal business and it was on this day that the original sentence was revoked.

Counsel for the State, while conceding that the presiding justice may modify a sentence previously imposed at the same term of court, providing execution of the sentence has not begun, contends that the action which took place on September 28, 1957 was not at the same term of court. It is the State's contention that where the statute authorizing the September Term of Court in Aroostook County made no provision for an adjournment back from Caribou to Houlton, that there was in fact no current term of court in existence on September 28, 1957, and that the action taken by the presiding justice in revoking the original sentence was a complete nullity. Stating the position of the State in another way, it seems that the State says that it was beyond the power of the court to adjourn from Caribou back to Houlton and that in essence, what the court attempted to do on September 28, 1957 was not within any term at all. It is the position of the State that when court adjourned the term at Caribou, the effect was a final adjournment of the term, because there is no legislative authority to adjourn the term back to Houlton.

To rephrase the State's position in still another manner, the State says in effect that the Legislature established a September Term of Court to be held first in Houlton for criminal business and then in Caribou for civil business.

Upon this theory, the State argues that the court had not been given the power by the Legislature to reconvene the term from Caribou back to Houlton.

This issue can be resolved only upon a determination of Legislative intent.

The word "adjournment" is not one of fixed but of flexible meaning. See 2 C. J. S. 47. In Webster's Dictionary we find among other definitions for the word "adjourn" the following: "To suspend a session, for resumption at another time or place, or indefinitely; as, a court *adjourns* sine die."

This statute is to be construed as other statutes are with the view of determining Legislative intent. We are of the opinion that the obvious intent and purpose of the Legislature was that there should be one September Term of Superior Court held annually in Aroostook County; that it was Legislative intendment only to limit the business transacted in Houlton to criminal business and the business transacted in Caribou to civil business, but that the term continued either in one place or the other until *final* adjournment. Manifestly, the changing of the place where the court shall sit is merely for convenience of litigants and interested parties, and we find nothing in the statute to preclude reconvening in Houlton to dispose of unfinished criminal business.

Upon this issue, we hold that the action of the presiding justice on September 28, 1957, when he revoked his original sentence, took place at the same term of court at which the original sentence was imposed.

We pass now to consideration of whether or not the provisions of the general probation and parole law enacted as Chapter 387, P. L., 1957, which permit a court to suspend the execution of a sentence already imposed and place the respondent on probation, infringes upon any of the provisions of the Constitution of the State of Maine.

Regardless of the opinion in the case of *State* v. *Sturgis*, 110 Me. 96, which we will discuss later, the issue presented to us in the instant case appears to be of novel impression in this State.

The first probation statute in this State was enacted as Chapter 263, P. L., 1909. After a provision relating to the appointment of probation officers, Section 2 of this Chapter reads in part as follows:

"Section 2. When any person by plea of guilty, or upon trial, is convicted of any offense other than a capital offense before any court having criminal jurisdiction, such court is invested with authority in its discretion to continue the matter for sentence, suspend sentence, or suspend the execution of any sentence, to be done under the provisions of this act, but nothing herein contained shall be held to take away the right of appeal from any respondent, or any right to have his case reviewed or retried under the provisions of law as they now exist. The court at or before the time for sentence shall inquire into the circumstances of the respondent and of his offense, and if the matter is continued for sentence, the respondent shall be placed in the custody and under the control of the probation officer in the county where such respondent has been convicted. Such sentence may be continued by the court indefinitely, or to definite time, and in every instance the court may order the respondent to report to the probation officer at such times and places as the court shall designate, and shall cause to be given to the respondent a writing signed by the clerk or by the court showing such continuance for sentence, the time during which the same is continued, and the times and places when the respondent is to report to such probation officer."

In 1957 the Legislature enacted a general probation and parole law, which is Chapter 387, P. L. 1957.

The Sections of this Chapter, which are pertinent to the issues before us are as follows:

"**Sec. 6. Probation of person by court.** When a person is convicted of an offense which is not punishable by life imprisonment, the Court may continue the case for sentence, suspend the imposition of sentence, or impose sentence and suspend its execution."

"**III.** The Court may impose a sentence, suspend its execution for not more than 4 years and place the respondent on probation."

"**Sec. 7. Person on probation under jurisdiction of Court.** A person on probation is under the sole jurisdiction of the Court which finally tried his case. When a person is placed on probation, he shall be committed by the Court to the custody and control of a Probation-Parole Officer. The Probation-Parole Officer has the same authority with respect to the probationer as if he were surety upon the recognizance of the probationer. The Court shall fix the duration of the probation, which may not be more than 4 years. The Court shall determine the conditions of the probation, and shall give the probationer a written statement containing the conditions of his probation. The probationer shall forthwith report to the Probation-Parole Officer and shall subsequently report to the Probation-Parole Officer as he may direct."

"**Sec. 8. Person violating probation.** When a probationer violates a condition of his probation, the Probation-Parole Officer shall forthwith report the violation to the Court, or to a Justice of the Court in vacation, which may order the probationer returned. After hearing, the Court or Justice may revoke the probation and impose sentence if the case has been continued for sentence or if imposition of sentence has been suspended; or may order the probationer to serve the original sentence where its execution has been suspended."

"Sec. 9.  **Person discharged from probation by Court.**  A person on probation may be discharged by the Court which placed him on probation."

"I.  When it appears to a Probation-Parole Officer that a probationer is no longer in need of his supervision, he may so report to the Court, or to a Justice of the Court in vacation, which may order the probationer returned.  After hearing, the Court or Justice may terminate his probation and allow him to go without day."

"II.  When it appears to the Court that a probationer under its jurisdiction has fulfilled the conditions of his probation, it shall terminate his probation and allow him to go without day."

The general probation and parole law was amended at the Special Session of the Legislature by Chapter 428, P. L., 1957.  However, these amendments did not go into effect until October 31, 1957, and are not applicable to the case now before us.

Article III, of the Constitution of Maine, relating to the distribution of powers reads as follows:

"§ 1.  The powers of this government shall be divided into three distinct departments, the legislative, executive and judicial."

"§ 2.  No person or persons, belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted."

Sections 1 and 11 of Article V, Part First, of the Constitution of Maine, defining executive powers, read:

"§ 1.  The supreme executive power of this state shall be vested in a Governor."

"§ 11.  He shall have power, with the advice and consent of the council, to remit, after conviction, all forfeitures and penalties, and to grant reprieves, commutations and pardons, - - - -."

The only opinions of this court in which the question of the constitutionality of the probation statute is referred to are *State* v. *Jenness,* 116 Me. 196; 100 A. 933, and *Cote* v. *Cummings,* 126 Me. 330; 138 A. 547.

However, we find statements in *State* v. *Sturgis,* 110 Me. 96; 85 A. 474, which would seem to indicate that the question of the constitutionality of the probation statute has been passed upon by this court. Nevertheless, a study of this opinion, and references thereto in subsequent opinions, as well as a qualifying statement in the opinion itself, would seem to indicate that the issue of constitutionality was not in fact passed upon.

In the case of *State* v. *Sturgis, supra,* the action was one of scire facias to recover the penal sum in a recognizance entered into by the defendants. It appears that the defendant, Charles E. Sturgis, was convicted of maintaining a liquor nuisance, at the January 1910 Term of the Superior Court for Kennebec County. He was sentenced to pay a fine of $1000 and in addition was sentenced to imprisonment in jail for a term of 6 months, and in default of payment of fine, 30 additional days in jail; the imprisonment part of the penalty to be cancelled on payment of the fine, if respondent shall recognize with sufficient sureties in the sum of $1500 to keep the peace and be of good behavior, and especially to violate no provision of the law for the prevention of the traffic in intoxicating liquors for the term of two years.

The fine was paid and the peace recognizance given. Thereafter, at the September Term 1911 of said Superior Court, Sturgis entered a plea of *nolo contendere* to a search and seizure process entered against him for a violation of a provision of law for the prevention of the traffic in intoxicating liquors, and was sentenced thereunder to pay a fine and costs which he paid. Thereupon, at said September Term of

Court, he and his sureties in the peace recognizance were defaulted and this action of scire facias was brought to recover the penalty of the recognizance.

The court said that it is fundamental law that the sentence in a criminal case should be definite and certain, and not dependent upon any contingency or condition. The court further said, that in the absence of a statute authorizing such a sentence, that a sentence in the alternative is bad for uncertainty. The court then ruled that the sentence imposed on Sturgis was invalid, because it was in the alternative and judgment was entered for the defendants.

In the course of the opinion the court had this to say:

"Again, it is a well recognized principle, that after a sentence has been imposed the court has no authority to relieve the convict from its execution. The authorities draw a clear distinction between the suspension of the imposition of a sentence and the indefinite suspension or remission of its enforcement. There is a conflict of authority as to the power of the court after a conviction to indefinitely postpone the imposition of the punishment therefor prescribed by law, but however the courts may differ as to such power, it is well established that the court cannot, after the judgment in a criminal case is rendered and the sentence pronounced, indefinitely postpone the execution of that sentence, or commute the punishment and release the prisoner therefrom in whole or in part. Of course, it is not to be understood that the court has not the power to temporarily postpone the execution of its sentence pending an appeal and other proceedings to obtain a new trial or review of the judgment, and in cases where cumulative sentences are imposed, and perhaps in some cases of great necessity and emergency. And the power of the court to correct errors in its judgment, and to change its sentence, during the term at which it is imposed and before its execution has begun, is

another and different matter. The act which the authorities hold that the court has not the power to do, is not the act which stays the execution of its sentence in order that the convict may exercise his legal rights to obtain a reversal or modification of the judgment against him, and not the act done to correct its sentence, so that it shall be in accord with its final and lawful judgment, but the act done for the purpose of exonerating the convict, in whole or in part, from the final and lawful judgment and sentence of the law which has been imposed upon him. That is the power to pardon, to commute penalties, to relieve from the sentences of the law imposed as punishments for offenses against the State, which power has not been given to the courts, but confided exclusively to the Governor of the State, with the advice and consent of the Council. Const. Maine, Art. V., part First, Sec. 11.

"It may be unnecessary to cite authorities in support of this principle, that after sentence has been pronounced in a criminal case the court cannot as a matter of leniency to the convict, do that which would in effect cancel the sentence and reprieve or pardon the offender in whole or in part." *State* v. *Sturgis,* 110 Me. 96, 100; 85 A. 474.

In its final summary, the court made this statement:

"The citation of authorities need not be multiplied, for they are in substantial harmony in holding that where the court has pronounced the sentence of the law against one convicted of a criminal offense, it then has no power *(unless so authorized by statute)* to make any order, the effect of which would be to indefinitely suspend the execution of that sentence, - - - - - - - - - -." (Emphasis supplied.) *State* v. *Sturgis,* 110 Me. 96, 104; 85 A. 474.

It will be noted that a determination of the issue before the court in *State* v. *Sturgis,* was not dependent upon the

constitutionality of the probation statute (then actually in existence), so that it would seem that whatever bearing this statement of the court may have upon the constitutionality of the probation statute must be considered obiter dicta and is not to be construed as authority or precedent.

It is somewhat interesting to note that the opinion in *State* v. *Sturgis,* was rendered in 1912 and that the probation statute enacted in 1909 was in effect at the time the opinion was rendered, and yet no reference is made to the statute.

In the case of *State* v. *Jenness, supra,* at the January Term 1917 of the Superior Court for Kennebec County, the respondent was tried and convicted for maintaining a common nuisance, and was sentenced to pay a fine and in default of payment to suffer imprisonment for a term of ten months. Exceptions taken during the course of the trial were afterwards overruled for want of prosecution, and in March, 1917, he was committed to jail in execution of sentence. At the same January term of the Superior Court, he was also tried and convicted on the charge of unlawful possession of intoxicating liquor. Upon this second charge, he was sentenced to fine and imprisonment, and, it seems, was placed "on probation." At the April Term of the court, complaint having been made of the conduct of the respondent, the court, after hearing, directed that the following docket entry be made: — "Probation off, mittimus to issue at expiration of sentence in number 30," which was the nuisance case.

To this ruling and direction, the respondent excepted, on the ground that the order made at a term subsequent to the term at which sentence was imposed was in fact a changing of sentence and the imposing of a new and additional sentence, whereas the original sentence unmodified by this subsequent order of the presiding justice ran concurrently

with the sentence in the nuisance case, which the respondent was then serving in jail. The court sustained the position taken by the respondent.

While the court recites its authority to suspend the execution of the sentence by virtue of the provisions of § 12, Chap. 137, R. S., 1916 (the probation statute enacted in 1909), the opinion ends with this paragraph:

> "The constitutionality of such a statute as the one in question has been raised elsewhere. But it has not been raised nor suggested in this case, and we have now no occasion to consider it." *State* v. *Jenness,* 116 Me. 196, 198; 100 A. 933.

In the case of *Cote* v. *Cummings, supra,* the respondent after being found guilty in the Municipal Court of Waterville of illegal possession of intoxicating liquor was sentenced to pay a fine of $500 and to serve imprisonment for two months. He took an appeal to the next term of the Superior Court. Prior to the time that the Superior Court convened, he withdrew his appeal and paid the fine. The jail sentence was suspended and he was placed on probation for one year. Within one year, he was ordered to appear before the court and found guilty of having violated the probation regulations, and was ordered to serve the two months. Mittimus was issued, and he was committed. He applied for a writ of habeas corpus which was issued, and upon the theory that a so-called "split" sentence was unauthorized and illegal, the exceptions of the respondent were sustained.

The issue of the constitutionality of the probation statute was not before the court. However, the court had this to say:

> "The statutory authority in this state for the suspension of the imposition or execution of a sentence or for a stay of execution is the Probation Act of 1909 (Rev. Stats. 1916, Chap. 137, Secs. 12, 13, 14) and Rev. Stats. 1916, Chap. 136, Sec. 27 as

amended by the Public Laws of 1917, Chap. 156, Sec. 3. -------------- What limitations upon the authority of a court of general jurisdiction to postpone the imposition of a sentence, or to suspend sentence, or to stay execution of sentence, now exist, if any, we find it unnecessary to decide and express no opinion thereon." *Cote* v. *Cummings,* 126 Me. 330, 338; 138 A. 547.

The court in *Cote* v. *Cummings* in referring to the opinion in *State* v. *Sturgis,* further said:

"The opinion laid down 'some principles applicable to judgments and sentences in criminal cases,' and said, 'The authorities draw a clear distinction between the suspension of the imposition of a sentence and the indefinite suspension or remission of its enforcement. There is a conflict of authority as to the power of the court after a conviction to indefinitely postpone the imposition of the punishment therefor prescribed by law, but however the courts may differ as to such power, it is well established that the court cannot, after judgment in a criminal case is rendered and the sentence pronounced, indefinitely postpone the execution of that sentence, ----------." *Cote* v. *Cummings,* 126 Me. 330, 335; 138 A. 547.

That this court assumed that the question of the constitutionality of the probation statute had never been passed upon, in spite of the statement in the case of *State* v. *Sturgis,* is strongly indicated, we think, by the following paragraph in the opinion of *Cote* v. *Cummings:*

"That the court meant this could not be done without statutory authority appears from its final summary, (p. 104) 'The citation of authorities need not be multiplied for they are in substantial harmony in holding that where the court has pronounced the sentence of the law against one convicted of a criminal offense, it then has no power *(unless so authorized by statute)* to make any order, the effect of which would be to indefinitely

suspend the execution of that sentence.' " (Emphasis supplied.) *Cote* v. *Cummings,* 126 Me. 330, 336; 138 A. 547.

It appears by the weight of authority that in the absence of statutory enactment, a court has no power indefinitely to suspend the execution of a sentence, either in whole or in part, and that any such order made after judgment, is void. 24 C. J. S. Criminal Law, § 1618 a.

However, suspension of execution of sentence, in many states, is authorized by statutes which control and regulate the cases and conditions under which suspension may be ordered and these statutes have generally been held constitutional.

"A statute authorizing the suspension of the execution of sentences or providing for probation in case of such suspension, is not unconstitutional, and does not encroach on the constitutional power of the executive to grant reprieves and pardons." 24 C. J. S. Criminal Law, § 1618 b.

In the case of *Belden* v. *Hugo,* 91 A. 369, Conn. (1914), the constitutionality of a probation statute authorizing suspension of execution of the sentence was attacked. The court held that there was nothing in the statute violative of the Constitution, and had this to say:

"In passing upon this question it is important that we gain a correct conception of the character of that which the statute authorizes the courts to do in the matter of stays of execution. In no true sense is it an exercise of the pardoning power. The provisions of the statute like those authorizing releases from imprisonment on parole merely prescribe conditions attaching to the punishment authorized and inflicted. The General Assembly defines the punishments which may be imposed and it may gather around those punishments such incidents or conditions as it may deem wise. Statutes which prescribe these incidents or conditions,

although general in their application, are dealing with the punishment, and their provisions enter into and form a part of it. So it is that every sentence to imprisonment for a term carries with it and has incorporated into it by necessary implication those provisions whose operation may result in a modification of its letter. When some such provision results in a release on parole or stay of execution with a probation commitment, that result does not have its source in an exercise of the pardoning power. It comes in the due course of the operation of the sentence under the provisions of law which prescribe what it may be and its incidents. In this view of the matter there can be no doubt as to the competency of the General Assembly to legislate as it did in the probation statute and to attach to or incorporate into punishments authorized to be imposed the conditions it embodies.

"We need not stop here. Let it be assumed that there exists, in a stay of execution which may be made permanent, the essence of a remission of sentence. We are then unable to discover good reason, constitutional or otherwise, why courts of criminal jurisdiction may not by legislation be given control over their own judgments for the period of one year so that within that period they may be modified or erased. That at most is all that the stays provided for in the statute amount to. The power exercised even in that aspect of it does not constitute a pardon or commutation. It is in effect only a change of judgment, and for that reason a radically different thing from a pardon or commutation, which import that the sentence stands while the sentenced person is relieved from its operation upon him. The gist of that which the statute authorizes is that the pronouncement of the court may be changed, not that a way of escape from it is provided." *Belden* v. *Hugo,* 91 A. 369, 371.

The constitutionality of a New York statute authorizing suspension of execution of an imposed sentence was upheld in *People* v. *Goodrich,* 149 N. Y. S. 406. The court said:

"The question thus presented is whether the trial court had power at the March term, after passing sentence of imprisonment, to direct a suspension of the same; for, if it had such power, then it clearly possessed a like power to revoke such suspension at a future term. In my opinion the court possessed such power, both at common law and under the statutes. The inherent power of the Supreme Court over its own decrees, both in pronouncing judgment and in suspending the execution of the same, would seem to follow from its constitution and the very nature of its jurisdiction. Indeed, such power has rarely been questioned. ------------ The matter was settled beyond all question by the Court of Appeals in the case of People v. Court of Sessions, 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856, where it was held that the court possessed inherent power to suspend sentence after conviction. The court in this case clearly points out how the suspension of judgment in a criminal case in no manner conflicts with the pardoning power granted to the executive.

"But it is urged that the above cases all related to the postponement of sentence, while the case at bar was a postponement of the execution of a sentence after it had been passed. It is difficult to see any distinction between the two cases. If the court possesses inherent power to postpone the passing of sentence, why should it not possess a like power to postpone execution of a sentence after it has been pronounced? As is said in People v. Fabian, 126 App. Div. 97, 111 N. Y. Supp. 140, the suspension of sentence in no way disturbs the finding, but merely postpones the imposition of punishment. Why may not the same result be accomplished by postponing execution?

"This power of postponing the infliction of punishment both before and after sentence, seems to have been exercised in England from the earliest times. In the reign of Queen Elizabeth the question was submitted to the Queen's Bench whether

the justices of assize could, after the session had adjourned, lawfully command the sheriff to respite the execution still longer, and by the opinion of all the justices the order for further respite was adjudged good enough, and they said that the custom of the realm had always been to the effect. 2 Dyer, 205." 149 N. Y. S. 406, 408.

In holding that the power to suspend the execution of a sentence under probation statutes was not an exercise of the pardoning power, the Vermont Supreme Court in the opinion of *In re Hall,* 136 A. 24, said:

"It is generally held that statutes which confer upon a court the power to suspend execution of sentence, and commit the respondent to the custody of the probation officer, are valid, and do not contravene the constitutional provisions which vest the pardoning power in the executive." *In re Hall,* 136 A. 24, 25.

"In Ex parte United States, 242 U. S. 27, 52, after holding that the United States District Courts possessed no inherent power indefinitely to suspend the execution of a sentence, the validity of probation statutes was distinctly recognized, Chief Justice White saying:

" 'And so far as the future is concerned, that is, the causing of the imposition of penalties as fixed to be subject, by probation legislation or such other means as the legislative mind may devise, to such judicial discretion as may be adequate to enable Courts to meet by the exercise of an enlarged but wise discretion the infinite variations which may be presented to them for judgment, recourse must be had to Congress whose legislative power on the subject is in the very nature of things adequately complete.' "

It appears that our own court in *Welch* v. *State,* 120 Me. 294; 113 A. 737, has looked with favor upon the probation statute, even though no opinion was expressed relating to

the constitutionality thereof. This was a writ of error in which the plaintiff in error pleaded guilty to a complaint for illegal possession of intoxicating liquor and the court ordered the case placed on the special docket without imposing sentence. At a subsequent term the case was brought forward from the special docket and sentence was imposed upon him. The court in sustaining the power to place the cause upon the special docket said:

> "No probation was attempted in the case at bar. None was necessary. The court in placing the cause upon the special docket was not compelled to place the respondent in charge of a probation officer. The broad powers as to sentence inhering in a court of general jurisdiction were not diminished or curtailed by the passage of the Probation Act of 1909. That act did not take from but added to the authority of the court. It afforded a new method in the administration of criminal law, tending toward the reformation rather than the punishment of the convicted, and placed a new and often times an effective instrumentality in the hands of the court." *Welch* v. *State*, 120 Me. 294, 298; 113 A. 737.

In determining whether or not a statute contravenes executive power:

> "The test is whether the statute 'authorizes the courts to perform a function so closely connected with and so far incidental to strictly judicial proceedings that the courts in obeying the statute would not be exercising executive or nonjudicial powers.'" Opinion of the Justices, 142 N. E. (2nd) 770, 773 (Mass.)

Somewhat analogous to the decisions that suspension of the execution of a sentence is not an exercise of the pardoning power is the decision in *Ex parte Ridley*, 106 P. 549 (Okla.), to the effect:

> "That an act of the Legislature specifically defining credits for good behavior, in existence at the

date of the judgment against the prisoner, becomes a part of the sentence and inheres into the punishment assessed, and is not an invasion of the constitutional prerogative of the Governor." *Ex parte Ridley,* 106 P. 549, 555.

The decision, *Eva E. Bowden's Case,* 123 Me. 359; 123 A. 166, is of interest upon the contention of the State that the probation officer is an officer of the executive department. In the *Bowden* case the court ruled that a deputy sheriff, while acting as court officer during a session of the court, is not and cannot be held to be exercising an executive function while acting as such officer.

The court said:

"It is a rule generally prevailing, and adhered to in this state, that the executive and judicial departments are absolutely independent of each other within the sphere of their respective powers. *Dennett, Petitioner,* 32 Maine, 508. This rule does not preclude just what happened in the instant case. A deputy sheriff, an executive as well as an administrative officer, was for the time being acting as an officer of the judicial department, as an officer of a court, within the sphere of the power of that court. This overlapping and interlacing of the duties of officers of the two departments is not unusual. On the contrary, it is a very necessary result of our governmental system." *Eva E. Bowden's Case,* 123 Me. 359, 365; 123 A. 166.

We arrive at the conclusion, therefore, that the probation officer in relation to convicted criminals who have been placed in his custody, is a judicial officer; and that the provisions of the probation statute do not infringe upon the Constitution.

Having concluded that the September Term of the Superior Court in Aroostook County is one term and that the revocation of the original sentence took place at the same Term of Court at which the original sentence was imposed;

and that the probation officer, when a convict has been placed in his custody, is a judicial officer; and that the provisions of the probation statute which permit suspension of the execution of a sentence do not conflict with any constitutional provision, we pass now to the only remaining issue; and that is whether or not the presiding justice at the September 1957 Term of the Superior Court had authority to revoke the sentence and the probation previously pronounced and imposed.

It seems clear, and it has been so generally held that a court has jurisdiction over its judgment within the term within which it was rendered and that such court has the power to alter or modify its sentence during the term within which it was imposed except when the execution of the sentence has begun. 24 C. J. S. Criminal Law, § 1587 and § 1588.

> "Unquestionably, the court has power, within definitely prescribed limits, to reconsider its judgment and to vacate, modify, or amend it by reducing or increasing a sentence imposed, *but such power must be exercised at the term or session of the court at which the judgment was pronounced.* Thus, where a sentence has not been executed, the court may, in a proper case, during the term or session in which the sentence was rendered, reconsider it and may modify, amend, or revise the sentence by either mitigating or even by increasing its severity. However, under the decisions, as we understand them, where the sentence has been put into execution, the court cannot, even during the term or session of the court at which the sentence was pronounced, modify, amend, or revise it in any way." *In re Cedar*, 269 N. Y. S. 733, 737.

> "The sole question is, Is the second sentence valid? In criminal cases, where a sentence is valid and the defendant has commenced the service of the sentence, the court thereupon loses all power over the case, even during the same term." *Hynes* v. *United States*, 35 F. (2nd) 734, 735.

"In this state it is definitely settled that when a person accused of crime has been convicted, sentenced, and delivered to the warden of a penitentiary or the superintendent of a reformatory under a mittimus, the court rendering the judgment and imposing the sentence has lost jurisdiction over the case and is without power to vacate, set aside, or modify the judgment." *People ex rel Swanson* v. *Williams*, 352 Ill. 227; 185 N. E. 598, 599.

This doctrine was recognized and adopted by our own court in *Brown* v. *Rice,* 57 Me. 55, where our court said:

"It seems to have been settled by practice and by authority, both in this country and in England, that during the term the court has power over its unexecuted entries or judgments, and may revoke, alter, or substitute new decrees or entries in place of those before made or entered and not executed, both in civil and criminal cases. - - - - - - - - - - - - - - So in a criminal case, so long as the sentence remains entirely unexecuted in any part, and no execution of it has been attempted or made, it has been held that it might be revoked, and another sentence be substituted." *Brown* v. *Rice,* 57 Me. 55, 57.

See also *State* v. *Sturgis,* 110 Me. 96 at 101; 85 A. 474, where the court said:

"And the power of the court to correct errors in its judgment, and to change its sentence, during the term at which it is imposed and before its execution has begun, is another and different matter."

Granted that the presiding justice at the September 1957 Term had the power to modify the sentence he had previously imposed, providing execution of the sentence had not begun, the sole remaining question is whether or not execution had begun when the respondent was placed in the custody of the probation officer. Such an issue has never

been decided in Maine, but there are numerous precedents supporting the theory that when a convict is placed in the custody of a probation officer, the execution of the sentence has not begun.

In the case of *Oxman* v. *United States,* 148 F. (2nd) 750; 159 A. L. R. 155, after the defendant had been convicted, he was sentenced to imprisonment, and was placed temporarily in a room in the marshal's office close by the courtroom, awaiting action on certain co-defendants. Before being removed to the place at which his sentence was to be served, he was called back into court. The original sentence was revoked and a new sentence imposed. It was the contention of the defendant that when he was placed in this room, he had already begun to serve his sentence and, therefore, the court was without power to alter it. It was held that such temporary detention was not a beginning of the execution of his sentence. The court said:

> "The general rule is that judgments, both civil and criminal, are within the control of the court during the term at which they are made. For that time they are deemed to be 'in the breast of the court,' subject to be amended, modified, or vacated." *Oxman* v. *United States,* 148 F. (2nd) 750; 159 A. L. R. 155, 160.

In holding that the period during which the probationer was in the custody of the probation officer could not be counted as time during which he was undergoing punishment imposed upon him, the Supreme Court of Vermont said *In re Hall,* 136 A. 24:

> "The execution of his sentence did not come into operation until his commitment, after the finding by the court that the terms and conditions of his probation had been violated." *In re Hall,* 136 A. 24, 26.

In the case of *Schimpf* v. *Alvis,* 115 N. E. (2nd) 856 (Ohio), it was held that a sentence which is stayed is not

in force; and it is pointed out that the obvious purpose of probation is to stay the execution of the sentence. Manifestly, the very words "suspend the execution" imply that execution of the sentence has not begun.

In the case of *Belden* v. *Hugo,* previously cited, the defendant had been convicted at the April 1913 Term of Court and sentenced to a fine and to a term of one year in jail. The execution of the jail part of the sentence was suspended and he was committed to the custody of the probation officer for the term of one year. At the January 1914 Term of Court, the order of suspension was revoked and he was committed to jail to serve the original sentence. It was his contention that the time during which he was in custody of the probation officer should be deducted from his sentence. Upon the theory that the execution of the sentence had not begun when the respondent was placed in the custody of the probation officer, the court overruled his contention and had this to say:

> "One of the difficulties with the plaintiff's view is that it ignores the purpose of the probation commitment and mistakes its true character. It is not ordered for the purpose of punishment for the wrong for which there has been a conviction, or for general wrong-doing. Its aim is reformatory and not punitive. It is to bring one who has fallen into evil ways under oversight and influences which may lead him to a better living. The end sought is the good of the individual wrongdoer, and not his punishment. Underlying the act of commitment is the hope that it may prove that punishment will be unnecessary, and that its stigma may be avoided. A sentence partakes of an essentially different character. It is the judgment of the court formally pronounced 'awarding the punishment to be inflicted.' Black's Law Dictionary, 1071. It deals out punishment, and one of its underlying aims is to cause its subject to suffer for the wrong he has done.

"The suggestion that the probation commitment partakes of a penal character because it involves an award of custody, a restraint of liberty of conduct by the necessity of observance of prescribed rules and regulations, and the creation of a right and power of supervision in another is one which overlooks the end sought and the fundamental character of the limitations upon personal independence which are involved. Restraints upon individual freedom of action are not by any means all penal. The youth at school is under restraint. He comes under the duty of obedience to the rules prescribed for his well-being and wholesome development. He is subject to the supervision of a superior, and yet his school life is not one of punishment. There are limitations upon the right of individual freedom of action born of social conditions which are constantly recognized. Their character is not penal where the purpose of their imposition is not punitory.

"The nonpenal character of the probation commitment under our law is plainly recognized in its provisions wherein a suspension of the execution of the sentence imposed is provided for where a commitment to the custody of a probation officer is made, and a revocation of the suspension provided for when imprisonment in conformity to the sentence is to begin. The sentence, to use the words of the statute, does not come to have full force and effect until this revocation is made. A sentence unexecuted entails no punishment upon the offender. It is only a judicial pronouncement. It is the carrying into effect of the sentence by process providing for its execution which results in punishment. A suspension of execution necessarily involves a suspension of the penal consequences of the judgment. *Suspension is altogether inconsistent with operation. It implies a stay — a cessation of operation.* (emphasis supplied.) The position of a person under sentence, but committed to the care of a probation officer, as described in the language of the statute, involves the conception of a ceasing of the

operation of the sentence, and not operation of the sentence proceeding simultaneously with or by means of the probation process. The statute plainly contemplates nothing of the latter sort. It as plainly contemplates that proceedings to secure punishment shall not be in force during the period when the probation process is in operation, and that execution of sentence will not run unless and until that process shall have failed to accomplish the desired results." *Belden* v. *Hugo,* 91 A. 369, 370.

See also *Hynes* v. *United States, supra,* where the court said:

"Unless there is a statutory provision, or a provision in the judgment as entered, that the service shall begin at a specified time, service begins when the prisoner is delivered into the custody of the officer at the prison where the sentence is to be served." *Hynes* v. *United States,* 35 F. (2nd) 734, 735.

Bearing in mind the very words of the statute that permits suspension of the execution of a sentence, and that suspension is altogether inconsistent with operation, we are of the opinion that the execution of the sentence imposed upon the respondent in this case did not begin when he was placed in the custody of the probation officer. It would seem to follow that if the execution of a sentence begins with placing a convicted respondent in the custody of the probation officer, that the time he is in such custody would be deducted from the length of the sentence imposed. Manifestly, such was not the intent of the Legislature.

Looking at the case from the standpoint of the respondent, he had every reason to believe that he had not been convicted when the presiding justice revoked the original sentence and permitted him to withdraw his plea of guilty, and ordered the cause continued without further plea. Although the order of revocation did not specifically mention

the probation, it necessarily follows that the probation previously imposed was revoked, because there can be no probation until a person charged with crime has been convicted. Moreover, Section 1, Chapter 149, R. S., 1954, provides that "no person shall be punished for an offense until convicted thereof in a court having jurisdiction of the person and case."

It has also been held that:

"No person can be punished for crime except upon the verdict of a jury or upon a plea of guilty or nolo contendere." *State* v. *Cross,* 34 Me. 594.

When the complaint for alleged violation of probation was filed against this respondent on January 27, 1959, he was not on probation, because he had never been convicted.

The entry will be:

> *Complaint for alleged*
> *violation of probation*
> *dismissed.*