[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
The defendants have moved to dismiss all claims of the plaintiff in the above-captioned action on the ground that the plaintiff lacks standing to seek the relief it sets forth in its complaint, namely, declaratory and injunctive relief against a finding that the proposal by the City of New Haven and its Development Commission is consonant with the regional development plan of the defendant regional planning agency for the region in which the project is proposed to be situated.
The issues have been fully briefed and argued to the court.
The Complaint
The plaintiff City of Milford ("Milford") alleges in its complaint that it is a member of the South Central Connecticut Council of Governments and its Regional Planning Commission. It alleges that another member, the defendant New Haven Development Commission, the designated "development agency" for the defendant City of New Haven as defined in Conn. Gen. Stat. § 8-187, in November 1998 submitted to the Regional Planning Commission a project plan for a galleria mall at Long Wharf in New Haven on a site near Interstates 91 and 95, abutting Long Island Sound.
Milford further alleges that on December 10, 1998, a majority of the Regional Planning Commission voted to find that the project plan was in accord with the regional plan of development. Milford alleges that the plan New Haven presented did not include accurate and complete information and that the majority vote finding that the plan was in accord with the previously adopted regional development plan was "in violation of its statutory mandate under (Conn. Gen. Stat.) §8-191." Milford interprets that mandate as a statutory requirement to review each proposed development plan according to the same criteria as apply to the adoption of the regional development plan.
Milford asserts that the finding that the mall project was in accord with the regional development plan will allow New Haven and the New Haven Development Commission to pursue public subsidies for development. Milford claims its interest as a member of the Regional Planning Commission and as a municipality which would suffer from the alleged environmental and traffic impacts of the proposed project entitles it to a declaratory judgment that the mall plan should not have been found to comport with the regional plan, and that the information submitted was incomplete and inaccurate. Additionally, Milford seeks injunctive relief requiring New Haven to provide the Regional Planning Commission with full and accurate information concerning the impact of the mall. CT Page 5353
Milford also alleges that the regional development plan in effect at the time of the December 1998 finding on the mall proposal was not in compliance with the requirements for such regional plans set forth in Conn. Gen. Stat. § 8-35a, and that the Regional Planning Council breached a duty to Milford to formulate a conforming plan against which to assess proposals of member cities and towns for development projects. Milford seeks issuance of a writ of mandamus to require the South Central Regional Planning Commission and Council of Governments to adopt and maintain an up-to-date plan of regional development incorporating all elements required by Conn. Gen. Stat. § 8-35a and to desist from making any finding concerning any development proposal in the region until it has done so. Milford seeks a finding by this court that the New Haven proposal was erroneously found to comply with the regional development plan.
The Requirement of Standing
The issue of standing goes to the subject matter jurisdiction of the court, and a motion to dismiss asserting lack of standing may be made at any time. Stroiney v. Crescent Lake Tax District,205 Conn. 290, 294 (1987). "It is a fundamental concept of judicial administration . . . that no person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity." State v. Nardini,187 Conn. 109, 112-13 (1982). "`Standing' concerns `the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" State v. Nardini, supra,187 Conn. 113, quoting Data Processing Service Organizations v. Camp,397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). "One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." Munhall v. Inland WetlandsCommission of Lebanon, 221 Conn. 46, 55 (1992); Unisys Corporation v.Department of Labor, 220 Conn. 689, 693 (1991).
"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." Monroe v. Horwitch, 215 Conn. 469, 472-73 (1990). CT Page 5354
"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved."Steeneck v. University of Bridgeport, 235 Conn. 572, 579 (1995). The plaintiff in this case does not claim that it has standing by virtue of any statutory provision identifying it as an entity entitled to bring the claims it asserts, and it therefore has standing only if it satisfies the criteria for classical aggrievement:
 The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the challenged action, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the challenged action.
(Internal quotation marks omitted.) Steeneck v. University ofBridgeport, supra, 235 Conn. 579; Mystic Marinelife Aquarium, Inc. v.Gill, 175 Conn. 483, 493 (1978).
Many rulings concerning standing have been made in cases involving appeals from the decisions of administrative agencies or commissions. In such cases, standing is limited to aggrieved parties; and the elements of aggrievement subsume the principles of standing, quoted above, United Cable Television Services Corp. v. Department ofPublic Utility Control, 235 Conn. 334, 342 (1995). The statutes defining the powers of the administrative agency or commission may designate specific cognizable interests, such as the interests of competitors, see Light Rigging Co. v. Department of Public UtilityControl, 219 Conn. 168, 176 (1991), or they may not, see New EnglandRehabilitation Hospital of Hartford, Inc. v. Commission on Hospitalsand Health Care, 226 Conn. 105, 124-25 (1993). In the latter situation, a competitor must allege "a legally protected interest that is concrete and actual, not merely one that is hypothetical."New England Rehabilitation Hospital of Hartford, Inc. v. Commissionon Hospitals and Health Care, supra, 226 Conn. 127; and a mere showing of the potential of disadvantages caused by competition do not support standing unless the competition is unfair or illegal. Id., 138-139.
Where a claimant lacks standing, the court lacks subject matter jurisdiction. Tomlinson v. Board of Education, 226 Conn. 704, 717-18
(1993); Monroe v. Horwitch, supra, 215 Conn. 469; Lewis v. Swan, CT Page 535549 Conn. App. 669, 674 (1998).
The Statutory Scheme at Issue
Chapter 127 of the Connecticut General Statutes provides that the cities and towns in the various regions designated by the Secretary of the Office of Policy and Management may form regional planning agencies, to which each member municipality appoints representatives, pursuant to Conn. Gen. Stat. § 8-31a. Such regional planning agencies are authorized to "make a plan or development for its area of operation, showing its recommendations for the general use of the area including land use, housing, principal highways and freeways, bridges, airports, parks, playgrounds, recreational areas, schools, public institutions, public utilities and such other matters as, in the opinion of the agency, will be beneficial to the area." Conn. Gen. Stat. § 8-35a. Section 8-35a requires that this regional master plan shall be developed "based on studies of physical, social, economic and governmental conditions and trends," "shall be designed to promote abatement of the pollution of the waters and air of the region," and, if contiguous to Long Island Sound, "shall be designed to reduce hypoxia, pathogens, toxic contaminants and floatable debris" in the Sound. The regional planning agency is required by the same statute to hold a public hearing before adopting a regional development plan. Chapter 127 allows, but does not require, amendments to regional development plans. Municipalities may withdraw from their regional planning agency, and the agency goes out of existence if its membership is less than forty percent of the possible total number of representatives of the designated member towns in the region.
An entirely separate Chapter of the General Statutes provides that municipalities may lend funds to businesses and industries within a project area to meet planning objectives that are deemed public uses eligible for issuance of public bonds. This Chapter, Chapter 132, which is titled "Municipal Development Projects," sets forth the procedure by which a municipality may propose such a project to the Commissioner of Economic and Community Development for review. Conn. Gen. Stat § 8-189 sets forth the required contents of the proposal to the Commissioner. One of the required items is a finding "that the plan is in accordance with the plan of development for the municipality adopted by its planning commission and the plan of development of the regional planning agency, if any, for the region within which the municipality is located." Conn. Gen. Stat. §8-189 (1).
Conn. Gen. Stat. § 8-191 provides that before a project plan is CT Page 5356 adopted by a municipal development agency, there must be a finding by the municipal planning commission that the plan is in accord with the municipality's own development plan and a finding by the regional planning agency, if any, "that such plan is in accord with the plan of development for such region, or if such agency fails to make a finding concerning said plan within thirty-five days of receipt thereof by such agency, it shall be presumed that such agency does not disapprove of such plan."
Chapter 132 does not provide for any review by the regional planning agency of a muncipality's project plan proposal other than a review to determine if the proposal "is in accord with the plan of development for such region." The statute does not require the regional planning agency to review the merits of the plan; rather, that task is left to the Commissioner.
The Commissioner is required to review all such proposals, including all the information required by § 8-189, and to comply with the environmental review requirements of Conn. Gen. Stat. §§ 22a-1a
through 22a-1f. Conn. Gen. Stat. § 8-191a.
If a project plan is approved, a municipality may issue bonds and exercise other statutory powers set forth in Chapter 132 to complete the project.
Aggrievement as a Member of the Regional Planning Council
Milford claims that its standing proceeds from its legal interest as a member of the Regional Planning Council to have the council as a whole act in conformity with the applicable statutes. In oral argument it asserted that the Council has a fiduciary duty toward its members. No such relationship is defined in the statutes authorizing and defining the powers of regional planning councils. Section 8-31a, which provides for the formation of regional planning agencies, describes a process by which towns in each of the regions defined by the Secretary of the Office of Policy and Management join as members. This statute provides that "[e]ach town, city or borough within such region . . . shall be entitled to two representatives on such agency and shall be entitled to additional representation on such agency at the ratio of one representative for each fifty thousand of population or fraction thereof over and above a population of twenty-five thousand as determined by the last-completed federal census." None of the provisions within any of the sections of Chapter 127a describes any duties of the council to individual members. Section 8-37a
describes the members of the council merely as "representatives of the member towns," with no provision recognizing any duty of the body CT Page 5357 as a whole toward its members except the duty to review submitted project plans for conformity to the regional plan in existence at the time.
The Connecticut Supreme Court has ruled that a dissenting member of an agency has no standing to challenge the decision of the majority. Munhall v. Inland Wetlands Commission of the Town ofLebanon, supra, 221 Conn. 46. The plaintiffs in Munhall claimed the inland wetlands commission of which they were members had improperly rescinded an earlier decision of the commission and had engaged in procedural irregularities in approving an application. The plaintiffs claimed that as individual commission members they had a specific personal and legal interest in seeing that the earlier ruling was upheld and the allegedly improper later ruling was reversed. The Supreme Court ruled that this concern for the propriety of the commission's proceedings did not constitute a specific and personal interest of the dissenting commissioners, but was merely an interest held in common with other residents and taxpayers. Munhall v. InlandWetlands Commission, supra, 221 Conn. 46-47.
 We have never concluded that individual commission members are aggrieved for the purpose of appealing the decisions of the very agency upon which they sit. Inherent in such a state of the law is the notion that the legislative function of any agency, by its very nature, involves the interaction of competing ideas that eventually resolve themselves in a decision that may not satisfy all of the agency's members. This is the essence of the legislative process, a process that should not be compromised by ready access to a supplemental forum for those dissenting members who are disappointed in the outcome.
Munhall v. Inland Wetlands Commission, supra, 221 Conn. 52. The Court in Munhall noted that there was nothing in the inland wetlands statutes or regulations that designated individual members of the inland wetlands commission as enforcement authorities or that authorized individual commission members to pursue an action in court on behalf of the public interest. Similarly, no provision confers on any member of a regional planning commission authority to regulate the commission's activities or challenge a finding by the commission as a whole. As the Supreme Court noted in Munhall, if each member of a board or agency were viewed as having a personal interest in the outcome of a proceeding, that member should not be a decision maker in a case in which the member has an interest. Munhall v. InlandWetlands Commission, supra, 221 Conn. 53.
The courts of other states have reached the same conclusion, CT Page 5358 finding lack of standing of a member of a board or commission to challenge the majority's actions. See Cohen v. Board of Selectmen,376 A.2d 853 (Me. 1977); McTaggart v. Public Service Commission,541 P.2d 778 (Mont. 1975); Ohio ex rel. Basista v. Melcher,188 N.E.2d 293 (Ohio App. 1963).
Milford not only does not distinguish Munhall in its brief, it does not even mention this case. Instead, the plaintiff adverts to dicta in a ruling by another Superior Court judge dismissing a similar suit brought by Connecticut Post Limited Partnership, the owner of a shopping mall in Milford, against the same defendants based on the finding that the same New Haven mall proposal was consonant with the existing regional development plan. In that case,Connecticut Post Limited Partnership v. South Central RegionalCouncil of Governments, 1999 Conn. Super LEXIS 2860 (J.D. New Haven, Oct. 20, 1999), Judge Silbert rejected the argument that a competitor has standing to challenge the failure of the Council of Governments to update the regional plan to comply with Conn. Gen. Stat. § 8-35a
or its own by-laws, noting that "[a]lthough the express provisions of the statute reveal that municipalities and regional planning agencies are within the statute's `zone of interest,' they do not make any reference to competitive interests." 1999 Conn. Super Lexis 2860 p. 10. Milford inflates this statement to a judicial finding that members of the regional planning council have standing to challenge the decisions of the council as a whole. This court is unconvinced. The only plaintiff whose standing Judge Silbert was actually deciding was the Connecticut Post Limited Partnership. No claim of any kind by any municipality was before him. While there may be some kinds of claims by municipalities within the zone of interests created by §8-35a, a claim by a member that the majority had failed to act in conformity with a statutory duty is not, pursuant to the ruling of the Supreme Court in Munhall, supra, such a claims Judge Silbert's distinction may. for example, may have been a recognition that a municipality which submitted a project plan to the regional planning commission would have standing to dispute a finding of noncompliance of the project with the plan, since such a finding would affect that municipality's specific right to pursue a development project. The cited dicta do not constitute a finding that a dissenting member has standing to pursue its disagreement as a claim against the commission as a whole.
Milford also asserts that it has an interest in the Commission making findings of compliance of a project with the regional development plan only if each project independently satisfies all the same factors as were considered in formulating the regional development plan. As is explained below in relation to the analysis CT Page 5359 of Milford's claims against New Haven and its development commission, this claim rests on an erroneous construction of the extent of review of project plans by the Regional Planning Commission. Neither Conn. Gen. Stats. §§ 8-189 through 8-191 nor any other statute provides for the kind of review advocated by the plaintiff, and the plaintiff has failed to demonstrate a legally protected interest in the kind of review it seeks to have the regional planning council perform. Accordingly. Milford has failed to satisfy the requirements for standing to assert a claim of violation.
Milford has established no statutory standing and no standing proceeding from principles of aggrievement against the South Central Connecticut Regional Council of Governments or the South Central Regional Planning Commission arising from any duty of these bodies toward members.
Aggrievement as a Sufferer of Alleged Impacts
Milford asserts that it has standing because the Regional Planning Commission's finding enables New Haven to reach the later steps in securing funding for the proposed mall and that Milford has an interest in limiting public funding for private commercial or industrial projects which, in its view, harm regional interests. Milford does not allege that it owns land on the proposed site or that it operates any facility that will be affected by the proposed project. Its claim that the defendants' actions promote misuse of public funds is not based on an interest specific to Milford, but only a general concern of members of the public. Standing is not established by such an interest. Nader v. Altermatt, 166 Conn. 43, 51
(1974).
Milford also claims that it has standing because its residents may potentially experience increased traffic and pollution if the mall is actually built. The defendant Regional Council of Governments and Regional Planning Commission have not, however, authorized the construction of the mall. Their only action was to make a finding that the proposed project was consonant with the existing development plan for the region. The Regional Planning Commission has no statutory authority to authorize the appropriation of funds or to rule on any issue other than whether the proposed project squared with that plan. The plaintiff is therefore identifying an interest injured not by the actions of the Regional Planning Commission, but by the possible actions of agencies involved at later stages of the process.
The plaintiffs claim against New Haven and the New Haven Development Commission is that they secured a finding of compliance CT Page 5360 with the regional development plan by failing to provide accurate information to the Commission. The plaintiff has standing to assert that claim only if New Haven owed a legal duty to Milford with regard to the contents of its proposal. Milford claims that each of the members of the Regional Planning Commission had fiduciary responsibilities toward the other members. The statutes creating this entity and specifying the process for submission of development proposals do not support this claim. A member that submits a proposal not in accord with the development plan may fail to secure a finding, but it is not precluded by any provision in the statutes from submitting a plan that may disadvantage another member. The majority of the Council determined that the plan was consonant with the existing regional development plan, and Milford does not allege that it failed to vote against the finding because of any claimed inaccuracies.
The plaintiffs claims against New Haven assume that Conn. Gen. Stats. §§ 8-186 through 8-191 require a municipality seeking to develop "unified land and water areas" and "vacated commercial plants" for any projects to be developed with public funding to present a plan for the project that addresses each of the factors that the Regional Planning Commission must address in formulating its overall plan for development for the region. Those factors, set forth in Conn. Gen. Stat. § 8-35a, are not incorporated by reference into the statutes that define the process for a municipality to pursue a development project with public funds, §§ 8-186 through 8-191. Section8-191 (a)(1) provides that the task of the regional planning agency is simply to "find that such plan is in accord with the plan of development for such region." Nothing in this or any other statute requires that the regional planning agency review a municipality's project plan for compliance with other criteria. The plaintiff does not allege that New Haven's submission was insufficient to allow a determination that the project was in accord with the existing regional development plan. Since the statutory procedure at issue did not require more, Milford has failed to allege a claim within the zone of the protection of the statutes invoked, a requirement of standing. State v. Nardini, supra, 187 Conn. 113. "A party claiming aggrievement also must demonstrate that its asserted interest has been specially and injuriously affected in a way that is cognizable by law," United Cable Television Services Corp. v. Department ofPublic Utility Control, supra, 235 Conn. 343, and Milford has failed to satisfy this requirement because its claim is not even colorably a right supported by the statutes that the plaintiff invokes.
Milford objects that to find that it does not have standing on its claims in connection with the limited review of the Regional Planning Council is to allow an unworthy and ill-advised development CT Page 5361 project to proceed. Such is not the case. As has been pointed out above, the securing of a finding that the project is "in accord with the plan of development of such region" is merely a prelude to full review of the merits of the proposal by the Commissioner of Economic and Community Development, pursuant to Conn. Gen. Stat. § 8-191 (a) and a determination whether a grant should be made pursuant to Conn. Gen. Stat. § 8-190. It is the Commissioner who must decide whether the project plan is to be approved, and Conn. Gen. Stat. § 8-191a
specifically requires the Commissioner to comply with environmental laws, Conn. Gen. Stats. §§ 22a-1a through 22a-1f.
Conclusion
The motion to dismiss all of the plaintiffs claims against all of the defendants is granted for the foregoing reasons.
_____________________ Beverly J. HODGSON Judge of the Superior Court