STATE OF CONNECTICUT *v.* DANTE NARDINI

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and DALY, Js.

110

Argued February 4—decision released May 11, 1982

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Mary M. Galvin,* assistant state's attorney, for the appellant (state).

*Jerrold H. Barnett,* public defender, with whom were *Richard Emanuel,* assistant public defender, and, on the brief, *Bruce A. Sturman* and *Suzanne Zitser,* assistant public defenders, for the appellee (defendant).

PARSKEY, J. This appeal by the state challenges the constitutionality of the Connecticut Sentence Review Act. General Statutes §§ 51-194 through 51-197. Having examined the grounds of this challenge and having found them wanting, we affirm the constitutionality of the act.

This case arises out of action by the sentence review division reducing the sentence originally imposed on the defendant. After a jury trial the

defendant was found guilty of conspiracy to commit arson; General Statutes § 53a-48; and the substantive crime of arson in the first degree. General Statutes § 53a-111 (a) (1) and (2). He was sentenced by the court, *Schaller, J.,* on the conspiracy count to a term of eight to sixteen years and on the arson count to a consecutive term of ten to twenty years, for a total effective sentence of eighteen to thirty-six years. He filed a timely application to the sentence review division, *A. Armentano, J. Shea* and *Dannehy, Js.,* which, after a hearing, left the terms of the originally imposed sentences intact but ordered that the sentences be served concurrently for a total effective sentence of ten to twenty years. Subsequently the court, *Kinney, J.,* over the state's objection, resentenced the defendant in accordance with the decision of the sentence review division. The state, with permission of the presiding judge; General Statutes § 54-96; has appealed.

Before addressing the serious questions raised by the state we consider the defendant's challenge to the state's appeal. The defendant confronts the state at the appellate door with the issues of justiciability, standing and appealability. We discuss these issues seriatim.

## I

### DEFENDANT'S CHALLENGE

### A

#### JUSTICIABILITY

Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be

an actual controversy between or among the parties to the dispute: "Courts exist for determination of actual and existing controversies, and under the law of this state the courts may not be used as a vehicle to obtain judicial opinions on points of law." *Harkins* v. *Driscoll,* 165 Conn. 407, 409, 334 A.2d 901 (1973); *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979); (2) that the interests of the parties be adverse; *McAnerney* v. *McAnerney,* 165 Conn. 277, 283, 334 A.2d 437 (1973); *Lipson* v. *Bennett,* 148 Conn. 385, 389, 171 A.2d 83 (1961); (3) that the matter in controversy be capable of being adjudicated by judicial power; *Baker* v. *Carr,* 369 U.S. 186, 198, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); and (4) that the determination of the controversy will result in practical relief to the complainant. *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* supra, 20–21; *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944). The present case satisfies all of the criteria for justiciability. The controversy involves a substantive question with respect to the new sentence imposed on the defendant, the position of the parties involved is adverse, the validity of the Sentence Review Act is an appropriate matter for judicial resolution and the practical effect of resolving the issue would be to let the new sentence stand or else to reinstate the initial sentence.

## B

### STANDING

Standing involves a question of legal status. "It is a fundamental concept of judicial administration . . . that no person is entitled to set the machinery of the courts in operation except to

obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity." *Bassett* v. *Desmond,* 140 Conn. 426, 430, 101 A.2d 294 (1953); *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 549, 427 A.2d 822 (1980). "Standing" concerns " 'the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' [*Data Processing Service Organizations* v. *Camp,* 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970)]." *Ducharme* v. *Putnam,* 161 Conn. 135, 139, 285 A.2d 318 (1971); *Maloney* v. *Pac,* 183 Conn. 313, 320–21, 439 A.2d 349 (1981). Since the state's attorney has no cognizable personal interest in the present controversy but is acting in a representative capacity the determination of standing requires an inquiry into the status and function of the office of state's attorney.

In *State* v. *Keena,* 64 Conn. 212, 29 A. 470 (1894), we reviewed the powers and duties of the office of state's attorney. We said (pp. 214–15): "The powers and duties of a State's Attorney have never been defined by statute law; they are (except in certain particulars specifically enumerated in the statutes) the necessary incidents of the office, by force of the common law of this State. The language used in relation to the office has not materially changed since it was first formally established. In 1704 the 'Atturney for the Queen,' is required to 'prosecute and implead in the lawe all criminall offenders, and to doe all things necessary or convenient as an atturney to suppress vice and imorallitie.' 4 Colonial Records, 468. In 1730 this Act was

passed: 'In each county there shall be one King's Attourney, who shall plead and manage, in the county where such attourney is appointed, in all matters proper, in behalf of our sovereign lord the King.' 7 Colonial Records, 280.

"In 1764, apparently to remove any doubt that the representative of the crown also represented the sovereignty of the Colony, the King's attorneys in the several counties were empowered 'to appear in behalf of the Governor and Company of this Colony in all cases concerning them or brought for or against them in any of the said counties.' 12 Colonial Records, 258. In 1784 it was enacted that:—'In each county in this State, there shall be one State Attorney, who shall prosecute, manage and plead in the County where such Attorney is appointed, in all Matters proper for, and in behalf of the State.' Statutes 1786, p. 11. In the Revision of 1821 and of 1838 the same language was used. In 1849 the language was condensed as follows:—'The County Court, in each county, shall appoint one attorney for the State, who shall act as attorney in behalf of the State in the county where appointed.' Revision 1849, p. 208. In 1888 the statute reads thus:— 'A State's Attorney in each county, who shall act therein as attorney in behalf of the State.' General Statutes, § 763.

"It has been uniformly held since 1730 that the office then established carried with it the duty to conduct all criminal prosecutions in the Superior Courts, and the power to institute and carry on in every court having criminal jurisdiction (unless restrained by some statute) any criminal prosecution within the jurisdiction of the court, and also the power and duty to exercise the common law

powers appertaining to the office of Attorney General, so far as applicable to our system of jurisprudence."

Since then the powers and duties of the office of state's attorney have remained essentially unchanged. *State* v. *Bell,* 21 Conn. Sup. 246, 249, 154 A.2d 142 (1959). Indeed, in the criminal field, the legislature in General Statutes § 3-125 precluded the attorney general from having any supervision in "those legal matters over which prosecuting officers have direction." In sum, because the matter before us involves the validity of a sentence imposed as a result of a criminal prosecution the authority of the state's attorney to act on behalf of the state is beyond question. "As a representative of the people of the state, he is under a duty not solely to obtain convictions but, more importantly, (1) to determine that there is reasonable ground to proceed with a criminal charge; *State* v. *Hayes,* 127 Conn. 543, 581, 18 A.2d 895 (1941); (2) to see that impartial justice is done the guilty as well as the innocent; and (3) to ensure that all evidence tending to aid in the ascertaining of the truth be laid before the court, whether it be consistent with the contention of the prosecution that the accused is guilty." *State* v. *Moynahan,* 164 Conn. 560, 568, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973). In discharging the duty imposed upon him by law, if in his judgment the original sentence imposed on the defendant was valid and the resentence was invalid, it is entirely appropriate for him on behalf of the people of the state to challenge the constitutionality of the statute authorizing the resentence. The fact that under other circumstances he might be required to defend the action of the sentence review division

does not alter his role in or change the nature of the present controversy. See *United States* v. *I.C.C.*, 337 U.S. 426, 431, 69 S. Ct. 1410, 93 L. Ed. 1451 (1949).

## C

### APPEALABILITY

The defendant raises both a jurisdictional and a non-jurisdictional challenge to our review of the state's appeal. The jurisdictional aspect involves a claim that since the defendant has begun serving his sentence a reversal that resulted in the imposition of the original sentence would constitute double jeopardy. We do not agree. A criminal sentence once pronounced is not accorded the same constitutional finality as that which attaches to a jury verdict of acquittal. *United States* v. *DiFrancesco,* 449 U.S. 117, 132, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980); *State* v. *Pina,* 185 Conn. 473, 480, 440 A.2d 962 (1981). If the Sentence Review Act were to be declared unconstitutional then the sentence imposed under it would be illegal and void. *Leifert* v. *Turkington,* 115 Conn. 600, 604, 162 A. 842 (1932). A reimposition of the original sentence in these circumstances would not involve double jeopardy. *United States* v. *DiFrancesco,* supra, 135; *Sanabria* v. *United States,* 437 U.S. 54, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978); *Burks* v. *United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *State* v. *Pina,* supra; *State* v. *Lewis,* 176 Conn. 270, 273, 407 A.2d 955 (1978). The fact that the defendant was taken in execution under the resentence is immaterial. If the sentence is void then any action taken under it is a nullity. The defendant gains nothing from this claim.

The defendant observes that because § 51-196 makes the decision of the sentence review division final and provides for no appeal therefrom this court lacks subject matter jurisdiction of the state's appeal. The defendant's observation is only partly correct. While it is true that neither the state nor the defendant may appeal from the decision of the sentence review division; *United States ex rel. Kohlfuss* v. *Reincke,* 254 F. Sup. 440, 444 (D. Conn. 1964); this is not such an appeal. This appeal is from the judgment of the court imposing the new sentence and is taken pursuant to § 54-96 which permits the state, with the permission of the presiding judge (which was granted in this case) to appeal to this court from judgments of the Superior Court in criminal matters. Although the appeal from the resentencing judgment would be limited in scope, such limitation raises no jurisdictional questions in this court. See *State* v. *Heyward,* 152 Conn. 426, 207 A.2d 730 (1965).

Finally, under this heading, the defendant argues that we should not consider the question of the constitutionality of the Sentence Review Act because of the state's failure to raise this issue before the sentence review division. The defendant's contention is not well taken. The issue before us involves the legality of the resentencing judgment. Underlying that issue is the question of the validity of the Sentence Review Act. The state did raise that issue before the trial court whose judgment is now under review. Whether the state should have also raised this constitutional issue before the sentence review division is of no moment.

## II

### STATE'S CHALLENGE

The state mounts a two pronged challenge to the trial court's judgment. First, it asserts that the Sentence Review Act violates the separation of powers and the judicial articles of the state constitution. Second, it challenges the trial court's assertion that it was bound by the mandate of the sentence review division.

### A

#### SENTENCE REVIEW ACT

#### 1. Historical Review

In 1956, in response to a major uprising at the State Prison at Wethersfield, Governor Ribicoff appointed a Prison Study Committee to investigate the reasons for the prisoner unrest and to propose legislation to remedy legitimate prisoner grievances. Samuelson, "Sentence Review and Sentence Disparity; A Case Study of the Connecticut Sentence Review Division," 10 Conn. L. Rev. 5 (1977). The study committee found that the major complaint of prisoners was the inequitable distribution of penalties imposed on similar offenders for similar offenses and the unavailability of a practicable review of excessive sentences. First Interim Report of the Governor's Prison Study Committee (November 19, 1956), Hearings Before Joint Standing Committee on Judiciary and Governmental Functions, Pt. 2, 1957 Sess., p. 377, on H.B. 276. The two potential avenues for relief, namely, the board of pardons and the Supreme Court were found to be closed or virtually so as a practical matter. The board of pardons was of little avail because as a

matter of policy except in rare instances the minimum of an indeterminate sentence would not be commuted until the prisoner had served a substantial period of the sentence. Appeal to this court was equally fruitless because so long as the sentence was within the statutory limits an appeal challenging a sentence as excessive was nothing more than an appeal for clemency and a request that we exercise a discretionary authority that we do not possess. *State* v. *LaPorta,* 140 Conn. 610, 612, 102 A.2d 885 (1954); *State* v. *Horton,* 132 Conn. 276, 278, 43 A.2d 744 (1945). Of three possible solutions[1] considered, the study committee recommended a review division of trial court judges patterned after a statute adopted in the Commonwealth of Massachusetts. Mass. Ann. Laws, ch. 278, §§ 28A-28D (1943). In 1957 the legislature adopted a sentence review bill; Public Acts 1957, No. 436; General Statutes §§ 51-194 through 51-197; modeled substantially after the recommendations of the Prison Study Committee.

## 2. Operative Provisions

The act establishes a sentence review division consisting of three Superior Court judges appointed by the chief justice. General Statutes § 51-194. Any person receiving a nonmandatory sentence of confinement for one year or more may apply for review of sentence. General Statutes § 51-195.[2] On review

---

[1] The other solutions mentioned are an Adult Authority Board composed of law and social science trained personnel and the Supreme Court of Errors. The reasons given by the Prison Study Committee for not recommending either of these solutions are not pertinent to the issues raised in this appeal.

[2] "[General Statutes] Sec. 51-195. APPLICATION FOR REVIEW OF SENTENCE. Any person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for one year or more, may, within thirty days from the date such sentence was imposed or if

of the original sentence the division is authorized to let the original sentence stand, to increase or decrease it or may order such different sentence to be imposed as could have been imposed at the time of the original sentence. General Statutes § 51-196.[3] We have held that such increased sen-

the offender received a suspended sentence with a maximum confinement of one year or more, within thirty days of revocation of such suspended sentence, except in any case in which a different sentence could not have been imposed or in any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement or in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement, file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. Upon imposition of sentence or at the time of revocation of such suspended sentence, the clerk shall give written notice to the person sentenced of his right to make such a request. Such notice shall include statements that review of the sentence may result in decrease or increase of the minimum or maximum term within the limits fixed by law. A form for making such application shall accompany the notice. The clerk shall forthwith transmit such application to the review division and shall notify the judge who imposed the sentence. Such judge may transmit to the review division a statement of his reasons for imposing the sentence, and shall transmit such a statement within seven days if requested to do so by the review division. The filing of an application for review shall not stay the execution of the sentence."

This statute was amended effective July 1, 1981, in certain respects not pertinent to the present discussion.

[3] "[General Statutes] Sec. 51-196. REVIEW. DECISION. The review division shall, in each case in which an application for review is filed in accordance with section 51-195, review the judgment so far as it relates to the sentence or commitment imposed, either increasing or decreasing the penalty, and any other sentence imposed on the person at the same time, and may order such different sentence or sentences to be imposed as could have been imposed at the time of the imposition of the sentence under review, or may, in the case of a reformatory commitment, modify the conditions of commitment by ordering its suspension for such terms and upon such conditions as said division may in its discretion order, or may decide that the sentence or commitment under review should stand. In reviewing any judgment, said division may require the production of presentence or precommitment reports and any other records, documents or exhibits connected with such review proceedings. If

tences do not violate the double jeopardy provision of the federal constitution or the similar common-law rule as embodied in the due process provision, article first, § 9, of the state constitution. *Kohlfuss* v. *Warden*, 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962). If a different sentence or disposition is ordered the appropriate trial court is mandated to resentence the defendant as ordered by the review division. The decision of the review division is declared to be final and no appeal from its decision is provided. *United States ex rel. Kohlfuss* v. *Reincke,* supra.

The purpose and effect of the Sentence Review Act is to afford a convicted person a limited appeal for reconsideration of his sentence. *State* v. *Langley,* 156 Conn. 598, 602, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d

the review division orders a different sentence or disposition of the case, the court sitting in any convenient county or circuit shall resentence the defendant or make any other disposition of the case ordered by the review division. Time served on the sentence reviewed shall be deemed to have been served on the sentence substituted. The decision of the review division in each case shall be final and the reasons for such decision shall be stated therein. The secretary of the review division shall act as its clerk or, if there is no such secretary, the clerk of the superior court for the county in which the review division is meeting shall act as the clerk of the division. The acting clerk of the review division shall send the original of each decision to the clerk of the court for the county or judicial district where the judgment was rendered and a copy thereof to the chief justice, the judge who imposed the sentence or commitment reviewed, the person sentenced or committed, the principal officer of the correctional institution in which he is confined and the reporter of judicial decisions, who shall select therefrom for publication such decisions as he deems will be useful as precedents or will serve the public interest and shall prepare them for publication in the manner in which decisions of the supreme court are prepared. Decisions thus prepared for publication shall be published in the Connecticut Law Journal and, if the reporter of judicial decisions so directs, in the Connecticut Supplement."

712 (1969); *Kohlfuss* v. *Warden,* supra, 697. It thus gives him an optional de novo hearing as to the punishment to be imposed. *Consiglio* v. *Warden,* 153 Conn. 673, 676–77, 220 A.2d 269 (1966). It meets the complaints that gave birth to the Sentence Review Act by providing a judicial body with discretionary authority to review prison sentences.

## B

### CONSTITUTIONALITY

### 1. Separation of Powers

Article second of the Connecticut constitution provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." Under this article only the judicial department may exercise judicial power. *Adams* v. *Rubinow,* 157 Conn. 150, 154, 251 A.2d 49 (1968); *Heiberger* v. *Clark,* 148 Conn. 177, 189, 169 A.2d 652 (1961); *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 586, 37 A. 1080 (1897). The legislature may not confer upon the judicial department legislative and administrative functions; *Adams* v. *Rubinow,* supra, 158; *Norwalk Street Ry. Co.'s Appeal,* supra, 602; nor may the legislature interfere intrusively in the exercise by the judicial department of judicial power; *State* v. *Clemente,* 166 Conn. 501, 515, 353 A.2d 723 (1974); especially in those areas long understood to be peculiarly judicial. Id., 531 (*Cotter, J.,* dissenting). The only separation issue involved in this case is whether the establishment of a sentence review division within the Superior Court with authority to exercise discretion over criminal sentences constitutes

a constitutionally impermissible legislative interference with the exercise of judicial power by a constitutional court.

In a criminal case the imposition of sentence is the judgment of the court. *State* v. *Moore,* 158 Conn. 461, 463, 262 A.2d 166 (1969). Ordinarily a sentence may not be modified if any act is done in execution of it. *State* v. *Pallotti,* 119 Conn. 70, 74, 174 A. 74 (1934); see *Ex Parte Lange,* 85 U.S. (18 Wall.) 163, 176, 21 L. Ed. 872 (1873); *Liistro* v. *Robinson,* 170 Conn. 116, 123–24, 365 A.2d 109 (1976); *State* v. *Vaughan,* 71 Conn. 457, 460–61, 42 A. 640 (1899). This rule, however, involves the inherent power of the court to modify its judgment; it does not preclude the legislature from adopting enabling legislation to permit such modification. "Let it be assumed that there exists . . . [in a modification] the essence of a remission of sentence. We are then unable to discover good reason, constitutional or otherwise, why courts of criminal jurisdiction may not, by legislation, be given control over their own judgments for . . . [a certain] period . . . so that within that period they may be modified or erased." *Belden* v. *Hugo,* 88 Conn. 500, 507–508, 91 A. 369 (1914);[4] *State* v. *Tomczyk,* 20 Conn. Sup. 67, 69–70, 123 A.2d 283 (1956). The only constitutional problem would be double jeopardy but even that problem would be obviated if the court exercised its jurisdiction at the initiation of the defendant. *Murphy* v. *Massachusetts,* 177 U.S. 155, 160, 162, 20 S. Ct. 639, 44 L. Ed. 711 (1900); *Kohlfuss* v. *Warden,* supra, 696. Nor can it be seriously argued that such enabling legislation

---

[4] Although *Belden* v. *Hugo,* 88 Conn. 500, 91 A. 369 (1914), involved a suspension rather than a modification of a sentence the legal effect is the same, namely, a change in the judgment.

authorizes the judicial department to exercise the pardoning power. "The power exercised . . . does not constitute a pardon or commutation. It is in effect only a change of judgment, and for that reason a radically different thing from a pardon or commutation, which import that the sentence stands while the sentenced person is relieved from its operation upon him. The gist of that which the statute authorizes is that the pronouncement of the court may be changed, not that a way of escape from it is provided." *Belden* v. *Hugo,* supra, 508; see *United States* v. *Benz,* 282 U.S. 304, 311, 51 S. Ct. 113, 75 L. Ed. 354 (1931).

The judgments of a court, even a constitutional court of general jurisdiction, are not chiselled in granite. They may be vacated by an appellate court. *Styles* v. *Tyler,* 64 Conn. 432, 457, 30 A. 165 (1894). They may be vacated by the court itself on a motion or petition for new trial. General Statutes § 52-470; Practice Book §§ 320, 902. In the criminal field some judgments may be modified whether or not the defendant has been taken in execution. General Statutes § 53a-39.[5] None of these actions encroaches upon or interferes with the judicial process. To the contrary, they are part of that process. The claim that the separation of powers provisions of the state constitution preclude the legislature from authorizing action by the judicial department which could vacate its judgments is without substance.

[5] "[General Statutes] Sec. 53a-39. REDUCTION OF DEFINITE SENTENCE; CONDITIONS. At any time during the period of a definite sentence, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or the defendant discharged on probation or conditional discharge for a period not to exceed that to which he could have been originally sentenced."

## 2. Violation of Judicial Article

Section one of article fifth of the state constitution provides: "The judicial power of the state shall be vested in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The power and jurisdiction of these courts shall be defined by law." Because we have examined, construed and explained this provision in extenso heretofore; *Szarwak* v. *Warden,* 167 Conn. 10, 355 A.2d 49 (1974); *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 32 A.2d 547 (1943); *Styles* v. *Tyler,* supra; we need not repeat that discussion here. It is sufficient for our purposes to observe that the import of these decisions is that, inasmuch as trial and appellate jurisdiction are bestowed on the Superior Court and the Supreme Court respectively by the state constitution, the legislature is precluded from impairing the essential nature or jurisdiction of these courts. *Szarwak* v. *Warden,* supra, 40; *Walkinshaw* v. *O'Brien,* supra, 142; *Styles* v. *Tyler,* supra, 450. It is the state's contention that the Sentence Review Act impairs the essential character of the Superior Court by materially detracting from the exercise of its jurisdiction over serious criminal offenses and its power to impose punishment and that it also impairs the essential nature of the Supreme Court as a court of last resort for the correction of errors. We disagree in both respects.

Under the Sentence Review Act the Superior Court retains the ultimate power to impose punishment over serious criminal offenses. The fact that under the act it is given an opportunity at the ini-

tiation of the defendant to take a second look at any given sentence enhances its ability to discharge its constitutional responsibility. The further fact that the reexamination is to be undertaken by three detached Superior Court judges assures the fairness of the ultimate disposition. In a constitutional sense, the situation is no different than if criminal defendants were given a right to reopen a judgment for the limited purpose of rearguing the sentence before a judge other than the one who imposed the original sentence. The fact that the review panel does not itself impose the new sentence is a matter of mechanics since the Superior Court judge who carries out the order of the review panel is performing a purely ministerial function. Constitutional questions turn on the essence of matters under consideration rather than on their formal aspects. There is nothing about the Sentence Review Act which impairs in the slightest the essential character of the Superior Court.

Nor does the act impinge on this court. This court as a constitutional appellate court is limited to resolving errors of law; *Styles* v. *Tyler,* supra; and the legislature is precluded from conferring upon it discretionary factual authority. Insofar as the act provides a forum for the exercise of such authority it does not alter our appellate jurisdiction. That remains unchanged. To the extent that the imposition of a particular original sentence by the trial court might constitute an abuse of discretion; *State* v. *Rose,* 168 Conn. 623, 638, 362 A.2d 813 (1975); *State* v. *LaPorta,* supra; an appeal to this court is still provided and has not been diminished in any respect by the de novo hearing provisions of the Sentence Review Act. To the extent that a modified sentence ordered by the sentence

review division is illegal, such sentence is also subject to review on appeal to this court. *State* v. *Heyward,* supra.

## C

### MANDATE OF SENTENCE REVIEW DIVISION

The sentence review division is an arm of the Superior Court. When it issues a memorandum of decision ordering a modification of sentence such action is the operative judicial act of the Superior Court. *Jaquith* v. *Revson,* 159 Conn. 427, 431, 270 A.2d 559 (1970); *Grzys* v. *Connecticut Co.,* 123 Conn. 605, 607n., 198 A. 259 (1938). In civil matters the preparation of the judgment file is a clerical matter; the written judgment relates back to the filing of the memorandum. *Bogaert* v. *Zoning Board of Appeals,* 162 Conn. 532, 535n., 294 A.2d 573 (1972). Similarly, in criminal cases subject to sentence review, the imposition of the modified sentence following the action of the sentence review division is merely formal and ministerial. The trial court which imposes the modified sentence has no appellate authority and therefore is not authorized to review the action of the sentence review division. *State* v. *Deep,* 181 Conn. 284, 286, 435 A.2d 333 (1980). Furthermore, because it is bound by the previous action; *Maloney* v. *Pac,* supra; it lacks any independent discretionary authority to impose its own sentence. If the modified sentence is illegal in any respect the appropriate remedy for correcting such illegality is by appeal to this court; *State* v. *Heyward,* supra; by writ of error; *State* v. *Falzone,* 171 Conn. 417, 370

A.2d 988 (1976); *State* v. *Muolo,* 118 Conn. 373, 172 A. 875 (1934); or by writ of habeas corpus. *State* v. *Kyles,* 169 Conn. 438, 443, 363 A.2d 97 (1975).

There is no error.

In this opinion the other judges concurred.