# BOARD OF EDUCATION OF THE TOWN AND BOROUGH OF NAUGATUCK *v.* TOWN AND BOROUGH OF NAUGATUCK ET AL.
## (SC 16399)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued March 23—officially released August 14, 2001

*Mark J. Sommaruga*, for the appellant (plaintiff).

*N. Warren Hess III*, with whom were *Kevin H. McSherry* and, on the brief, *Franklin G. Pilicy*, for the appellees (defendants).

*Opinion*

BORDEN, J. The principal issue in this certified appeal is whether a dispute regarding the legality of certain provisions of the town charter of the named defendant, the town and borough of Naugatuck, was rendered moot as a result of subsequent amendments to the charter. In general terms, the provisions at issue concerned the service of the mayor on the plaintiff board of education of the town and borough of Naugatuck (board), and separate referenda on both the town and board budgets. Following our grant of certification,[1] the board appeals from the judgment of the Appellate Court dismissing the defendants'[2] appeal, vacating the judgment of the trial court, and remanding the case to that court with direction to dismiss the board's action.

---

[1] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Whether the Appellate Court properly dismissed the defendants' appeal based upon its determination that the action was moot?" *Board of Education* v. *Naugatuck*, 254 Conn. 929, 761 A.2d 752 (2000).

[2] The defendants involved in this appeal include: the town and borough of Naugatuck; the board of mayor and burgesses of the town and borough of Naugatuck; William C. Rado, the mayor of Naugatuck until May 19, 1997; Timothy D. Barth, the mayor of Naugatuck from May 19, 1997, until May 17, 1999; Sophie K. Morton, the town clerk of Naugatuck; Judy Crosswait, the borough clerk of Naugatuck; and Ann Hildreth and Jane H. Pronovost, the registrars of voters of Naugatuck.

*Board of Education* v. *Naugatuck*, 58 Conn. App. 632, 638, 755 A.2d 297 (2000). Both the board and the defendants claim that an actual controversy regarding the substantive validity of the charter provisions has existed at all times relevant to the underlying action and appeal process. We conclude that the controversy is not moot and, accordingly, we reverse the judgment of the Appellate Court.

The board sought a declaratory judgment[3] invalidating two amendments to the Naugatuck town charter that had been adopted in 1996.[4] Both the board and the defendants moved for summary judgment and entered into extensive factual stipulations to narrow the issues for consideration by the trial court. The trial court granted summary judgment in favor of the board, invalidating the town charter amendments at issue. The defendants appealed from the trial court's judgment to the Appellate Court. Without ruling on the merits, the Appellate Court determined that the 1996 amendments to §§ 3.18 and 14 of the town charter had been superseded by additional provisions presented to, and approved by, the Naugatuck electorate in 1998. *Board of Education* v. *Naugatuck*, supra, 58 Conn. App. 638. Accordingly, the Appellate Court dismissed the appeal

[3] The board initially also sought a temporary and permanent injunction concerning the board election to be held on May 5, 1997. Subsequently, however, the board withdrew its claim for injunctive relief.

[4] Three questions had been posed to the town electorate in 1996: (1) whether § 14 of the Naugatuck town charter should be revised to allow up to three separate referenda for the town and board budgets; (2) whether § 3.18 of the Naugatuck town charter should be amended to reduce the term of office for members of the board from six to two years; and (3) whether § 3.18 of the Naugatuck town charter should be revised to provide for a nine member board, one of whose members would be the mayor or his designee. Although the board initially challenged all three amendments, the parties subsequently agreed to submit only two for the trial court's consideration, namely, (1) the amendment to § 3.18 providing for service of the mayor on the board, and (2) the amendment to § 14 providing for separate referenda on the board and town budgets.

for lack of subject matter jurisdiction and remanded the case to the trial court with direction to dismiss the board's action as moot. Id., 641. This appeal followed.

This case presents an unusual situation because all of the parties to the appeal agree, as they did in the Appellate Court, that the question of the validity of §§ 3.18 and 14 of the town charter was not rendered moot by a subsequent amendment to the town charter in 1998. Nonetheless, because mootness implicates a court's subject matter jurisdiction; *Sadlowski* v. *Manchester*, 206 Conn. 579, 583, 538 A.2d 1052 (1988); we are required, as was the Appellate Court, to address the question of justiciability.

The following facts and procedural history, as stated by the Appellate Court, are relevant to the disposition of this appeal. "In April, 1997, the board commenced [a] declaratory judgment action against the defendants seeking to have the 1996 amendments to § 3.18 and § 14 of the Naugatuck charter declared invalid and void ab initio. The board's second amended complaint alleged that on or about November 5, 1996, the defendants submitted the following proposed charter amendments, among others, in the form of questions, to the Naugatuck electorate. Question three asked, 'Shall the Charter be revised to allow up to (3) three separate budget referend[a] for both the Town Operating Budget and the Board of Education Budget?' Question four asked, 'Shall the Charter be revised to provide that the terms of office for members elected to the Board of Education at the May 1997 election shall be for (2) two years, and that each term which shall expire thereafter shall also be elected for (2) two years?' Question five asked, 'Shall the Charter be revised to provide for a nine member Board of Education, one of whose members shall be the Mayor or his designee, effective at the May 1997 election?'

"These questions, the complaint alleged, related to §§ 3.18 and 14 of the Naugatuck charter and the board's responsibility pursuant to General Statutes § 10-220 to manage the public schools. The complaint also alleged that the board is vested with authority to carry out the educational policies of the state in Naugatuck, and that the membership amendment improperly altered the composition of the board, placed a member on the board who was not elected (the mayor), reduced the term of the members of the board and impaired the board's ability to obtain annual funding. The complaint further alleged that § 14 of the charter concerns the process by which the Naugatuck electorate can seek a referendum on the Naugatuck proposed budget, which is comprised of Naugatuck's operating budget and the board's annual budget, and that the budget amendment was invalid.

"The complaint further alleged that the defendants failed to follow the statutorily mandated procedures with which a municipality must comply to supersede a special act charter such as the one that serves as Naugatuck's organic law. . . . It also alleged that because the defendants failed to comply with the requirements of General Statutes § 7-191 prior to submitting the proposed amendments to the electorate, the amendments to the Naugatuck charter were invalid and without effect. In addition, the complaint alleged that although the defendants knew or should have known that they had failed to comply with the statutory requirements, following the November 5, 1996 election, they took affirmative steps to implement the alleged invalid and illegal amendments to the charter. The complaint prayed for a judgment declaring the amended provisions of the charter invalid and void ab initio.

"By the early spring of 1998, the parties had filed motions for summary judgment. They also stipulated to the facts underlying their dispute and to the issues

to be determined by the court. Because there were no genuine issues of material fact, the court was presented with a question of law. . . . Specifically, the court had to determine the validity of the amendments to §§ 3.18 and 14 of the charter. The facts to which the parties stipulated were, among other things, that the board had standing to bring the action, that the board had complied with Practice Book § 17-55, that the board would not pursue any claim that the defendants had failed to comply with the procedural requirements for a charter revision as required by statute, [and] that the court's ruling on the motions for summary judgment would be dispositive of all procedural and substantive issues . . . . [The parties also reached an agreement regarding] the text of §§ 3.18 and 14 of the charter immediately prior to the November 5, 1996 election, the text of the amended charter provisions subsequent to the election, the board's position with respect to the amended provisions, the defendants' position with respect to the amended provisions, and [the existence of] an actual and bona fide dispute concerning the amended provisions of the charter." (Citations omitted.) *Board of Education* v. *Naugatuck*, supra, 58 Conn. App. 634–36. Because the defendants seemed to concede the invalidity of the language in § 3.18 of the charter relating to the service of the mayor's "designee" on the board and represented that a new amendment would be presented to the electorate without this language, the board also agreed to withdraw its claim regarding this portion of the charter provision.

"The court's memorandum of decision was filed on September 29, 1998. The court found the following facts to be undisputed. The charter is the organic law of Naugatuck. Section 3.18 of the charter prescribes the number of board members, their method of election and the length of their terms. Section 14 of the charter sets forth the process by which the Naugatuck electorate can seek a referendum on the proposed budget,

which includes both the Naugatuck operating budget and the board's annual budget. Sections 3.18 and 14 of the charter were amended by the electorate on November 5, 1996, and the defendants took affirmative steps to give effect to the amendments. The court also found that the board had standing to bring the action and that it had complied with Practice Book § 17-55. The court further found that there were bona fide and substantial questions in dispute concerning the amended provisions of the charter that had led to uncertainty as to the parties' rights and relations, and that the challenge to the amendments presented a live controversy." Id., 636–37. Based upon its findings of fact and its review of the applicable law, the trial court rendered summary judgment in favor of the board and declared the 1996 amendments to §§ 3.18 and 14 of the town charter invalid. Thereafter, the defendants appealed.

"At oral argument before [the Appellate Court] and in their supplemental brief, the defendants acknowledged that they had not complied with all of the statutory requirements in amending the charter provisions at the November, 1996 election, but claimed that the parties had stipulated that the board would not pursue any claims that the defendants had failed to comply with the statutory procedural requirements for approving the charter amendments. The defendants attempted to correct the deficiencies in the 1996 charter amendment process by engaging in another charter revision process, culminating in the 1998 election. In the appendix to their supplemental brief, the defendants provided a certified copy of the moderator's return for the November 3, 1998 charter referendum, revealing that the electorate had voted on and approved three questions relating to the membership and budget amendments to the charter." Id., 637–38. The Appellate Court concluded that because the 1996 amendments had been superseded by those approved by the Naugatuck electorate

in 1998, the issues presented by the parties were moot. Id., 638. Accordingly, the Appellate Court dismissed the appeal for lack of subject matter jurisdiction. Id., 633, 641.

In this court, the board, joined by the defendants, claims that at all times relevant to both the underlying action and subsequent appeals there has been an actual controversy regarding the legality of the charter amendments. Specifically, the board contends that this case fits squarely within the four part test for justiciability established in *State* v. *Nardini,* 187 Conn. 109, 445 A.2d 304 (1982). We agree.

"Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citations omitted; internal quotation marks omitted.) Id., 111–12.

The first *Nardini* factor—the requirement of an actual controversy—is premised upon the notion that courts are called upon to determine "existing controversies, [and therefore] may not be used as a vehicle to obtain judicial opinions on points of law." (Internal quotation marks omitted.) Id., 112. An actual controversy exists "where there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement . . . ." (Internal quotation marks omitted.) *Pamela B.* v. *Ment,* 244 Conn. 296, 323, 709 A.2d 1089 (1998). It is well settled that the actual controversy must exist at all times during the appeal; *Sobocinski* v. *Freedom of*

*Information Commission*, 213 Conn. 126, 134–35, 566 A.2d 703 (1989); and that facts arising during, or subsequent to, the action in question may render such a controversy obsolete. *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 497–98, 522 A.2d 264 (1987).

In the present case, an actual controversy regarding §§ 3.18 and 14 of the Naugatuck town charter came into existence upon the amendment of those provisions in 1996. The November, 1996 election permitted, for the first time, service of the mayor on the board and separate referenda for both the board and town budgets. The substantive legality of these provisions was disputed by the parties from their inception, and ultimately was submitted to the trial court for resolution. The board alleged that § 3.18 of the charter, permitting the mayor to serve on the board, violated General Statutes §§ 9-206a and 7-193,[5] and that § 14 of the charter, dealing

---

[5] General Statutes § 9-206a provides: "(a) Notwithstanding the provisions of sections 9-203, 9-205 and 9-206, any town may, by charter provision, provide for the election of a board of education consisting of not less than three nor more than twelve electors of such town for terms of two, three, four or six years. Each such town may provide in an ordinance or charter provision for method of rotation. Such ordinance or charter provision shall not take effect until six months after adoption. Members of boards of education shall first be elected in accordance with any such ordinance or charter provision at the next regular town election following the effective date of such ordinance or charter provision.

"(b) No person serving an elected term to a board of education on the effective date of any such ordinance or charter provision shall have his term shortened or terminated by virtue of such ordinance or charter provision."

General Statutes § 7-193 provides: "(a) Any charter adopted or amended under the provisions of this chapter shall conform to the following requirements:

"(1) The municipality shall have a legislative body, which may be: (A) A town meeting; (B) a representative town meeting; (C) a board of selectmen, council, board of directors, board of aldermen or board of burgesses; or (D) a combination of a town meeting or representative town meeting and one of the bodies listed in subparagraph (C). In any combination, the body having the greater number of members shall have the power to adopt the annual budget and shall have such other powers as the charter prescribes, and the body having the lesser number of members shall have the power

with the budget referenda, violated General Statutes
§ 7-344.[6] The board further argued that the amended

to adopt, amend and repeal ordinances, subject to any limitations imposed
by the general statutes or by the charter. The number of members in any
elective legislative body, the terms of office of such members and the method
by which they are elected shall be prescribed by the charter.

"(2) The municipality shall have a chief executive officer, who may be
one of the following: (A) The first selectman; (B) a chief administrative
officer appointed by the board of selectmen; (C) a mayor elected by the
electors of the municipality; (D) a warden elected by the electors of the
borough; (E) a town, city or borough manager appointed by the board of
selectmen, the council, the board of directors, the board of aldermen or the
board of burgesses; (F) a chief administrative officer appointed by the
mayor. Any municipality having a manager as its chief executive officer
may also have a mayor who shall be the presiding officer of its legislative
body, shall be the ceremonial head of such municipality and shall have such
other powers and duties as the charter prescribes. The powers, duties and
term of office of the chief executive officer shall be those prescribed by
the general statutes and he shall have such other powers and duties as the
charter prescribes.

"(b) Every municipality shall have all municipal officers, departments,
boards, commissions and agencies which are required by the general statutes
or by the charter. Each municipality may have any municipal officers, depart-
ments, boards, commissions and agencies which are specifically allowed
by the general statutes or which are necessary to carry out any municipal
powers, duties or responsibilities under the general statutes. All such offi-
cers, departments, boards, commissions and agencies shall be elected,
appointed and organized in the manner provided by the general statutes,
except as otherwise provided by the charter or by ordinances or resolutions
adopted pursuant to such charter. Any municipality may, by charter or by
ordinances or resolutions adopted pursuant to such charter, alter the method
of election, appointment or organization of any or all of such officers,
departments, boards, commissions or agencies, including combining or sepa-
rating the duties of each, unless specifically prohibited from making such
alteration by the constitution or the general statutes."

[6] General Statutes § 7-344 provides: "Not less than two weeks before the
annual town meeting, the board shall hold a public hearing, at which itemized
estimates of the expenditures of the town for the ensuing fiscal year shall
be presented and at which all persons shall be heard in regard to any
appropriation which they are desirous that the board should recommend
or reject. The board shall, after such public hearing, hold a public meeting
at which it shall consider the estimates so presented and any other matters
brought to its attention and shall thereupon prepare and cause to be pub-
lished in a newspaper in such town, if any, otherwise in a newspaper having
a substantial circulation in such town, a report in a form prescribed by the

charter provisions interfered with the board's independence, integrity and ability to effectuate its duties as delegated to it by the state under General Statutes §§ 10-

Secretary of the Office of Policy and Management containing: (1) An itemized statement of all actual receipts from all sources of such town during its last fiscal year; (2) an itemized statement by classification of all actual expenditures during the same year; (3) an itemized estimate of anticipated revenues during the ensuing fiscal year from each source other than from local property taxes and an estimate of the amount which should be raised by local property taxation for such ensuing fiscal year; (4) an itemized estimate of expenditures of such town for such ensuing fiscal year; and (5) the amount of revenue surplus or deficit of the town at the beginning of the fiscal year for which estimates are being prepared; provided any town which, according to the most recent federal census, has a population of less than five thousand may, by ordinance, waive such publication requirement, in which case the board shall provide for the printing or mimeographing of copies of such report in a number equal to ten per cent of the population of such town according to such federal census, which copies shall be available for distribution five days before the annual budget meeting of such town. The board shall submit such estimate with its recommendations to the annual town meeting next ensuing, and such meeting shall take action upon such estimate and recommendations, and make such specific appropriations as appear advisable, but no appropriation shall be made exceeding in amount that for the same purpose recommended by the board and no appropriation shall be made for any purpose not recommended by the board. Such estimate and recommendations may include, if submitted to a vote by voting machine, questions to indicate whether the budget is too high or too low. The vote on such questions shall be for advisory purposes only, and not binding upon the board. Immediately after the board of assessment appeals has finished its duties and the grand list has been completed, the board of finance shall meet and, with due provision for estimated uncollectible taxes, abatements and corrections, shall lay such tax on such list as shall be sufficient, in addition to the other estimated yearly income of such town and in addition to such revenue surplus, if any, as may be appropriated, not only to pay the expenses of the town for such current year, but also to absorb the revenue deficit of such town, if any, at the beginning of such current year. The board shall prescribe the method by which and the place where all records and books of accounts of the town, or of any department or subdivision thereof, shall be kept. The provisions of this section shall not be construed as preventing a town from making further appropriations upon the recommendation of its board of finance at a special town meeting held after the annual town meeting and prior to the laying of the tax for the current year, and any appropriations made at such special town meeting shall be included in the amount to be raised by the tax laid by the board of finance under the provisions of this section."

220 and 10-241.[7] The defendants, however, maintained

[7] General Statutes § 10-220 provides: "(a) Each local or regional board of education shall maintain good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a and provide such other educational activities as in its judgment will best serve the interests of the school district; provided any board of education may secure such opportunities in another school district in accordance with provisions of the general statutes and shall give all the children of the school district as nearly equal advantages as may be practicable; shall provide an appropriate learning environment for its students which includes (1) adequate instructional books, supplies, materials, equipment, staffing, facilities and technology, (2) equitable allocation of resources among its schools, and (3) a safe school setting; shall have charge of the schools of its respective school district; shall make a continuing study of the need for school facilities and of a long-term school building program and from time to time make recommendations based on such study to the town; shall report annually to the Commissioner of Education on the condition of its facilities and the action taken to implement its long-term school building program, which report the commissioner shall use to prepare an annual report that he shall submit in accordance with section 11-4a to the joint standing committee of the General Assembly having cognizance of matters relating to education; shall advise the Commissioner of Education of the relationship between any individual school building project pursuant to chapter 173 and such long-term school building program; shall have the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes and at all times shall insure all such buildings and all capital equipment contained therein against loss in an amount not less than eighty per cent of replacement cost; shall determine the number, age and qualifications of the pupils to be admitted into each school; shall develop and implement a written plan for minority staff recruitment for purposes of subdivision (3) of section 10-4a; shall employ and dismiss the teachers of the schools of such district subject to the provisions of sections 10-151 and 10-158a; shall designate the schools which shall be attended by the various children within the school district; shall make such provisions as will enable each child of school age, residing in the district to attend some public day school for the period required by law and provide for the transportation of children wherever transportation is reasonable and desirable, and for such purpose may make contracts covering periods of not more than five years; may place in an alternative school program or other suitable educational program a pupil enrolling in school who is nineteen years of age or older and cannot acquire a sufficient number of credits for graduation by age twenty-one; may arrange with the board of education of an adjacent town for the instruction therein of such children as can attend school in such adjacent town more conveniently; shall cause each child five years of age and over and under sixteen years of age living in the school district to attend school in accordance with the provisions of section 10-184, and shall perform all acts

required of it by the town or necessary to carry into effect the powers and duties imposed by law.

"(b) The board of education of each local or regional school district shall, with the participation of parents, students, school administrators, teachers, citizens, local elected officials and any other individuals or groups such board shall deem appropriate, prepare a statement of educational goals for such local or regional school district. The statement of goals shall be consistent with state-wide goals pursuant to subsection (c) of section 10-4. Each local or regional board of education shall develop student objectives which relate directly to the statement of educational goals prepared pursuant to this subsection and which identify specific expectations for students in terms of skills, knowledge and competence.

"(c) Annually, each local and regional board of education shall submit to the Commissioner of Education a strategic school profile report for each school under its jurisdiction and for the school district as a whole. The superintendent of each local and regional school district shall present the profile report at the next regularly scheduled public meeting of the board of education after each November first. The profile report shall provide information on measures of (1) student needs, (2) school resources, including technological resources and utilization of such resources and infrastructure, (3) student and school performance, (4) equitable allocation of resources among its schools, (5) reduction of racial, ethnic and economic isolation, and (6) special education. For purposes of this subsection, measures of special education include (A) special education identification rates by disability, (B) rates at which special education students are exempted from mastery testing pursuant to section 10-14q, (C) expenditures for special education, including such expenditures as a percentage of total expenditures, (D) achievement data for special education students, (E) rates at which students identified as requiring special education are no longer identified as requiring special education, (F) the availability of supplemental educational services for students lacking basic educational skills, (G) the amount of special education student instructional time with nondisabled peers, (H) the number of students placed out-of-district, and (I) the actions taken by the school district to improve special education programs, as indicated by analyses of the local data provided in subparagraphs (A) to (H), inclusive, of this subdivision."

Although § 10-220 has been amended several times since the inception of the controversy at issue in this case, those changes are not relevant to this appeal. Reference herein is to the current revision of the statute.

General Statutes § 10-241 provides: "Each school district shall be a body corporate and shall have power to sue and be sued; to purchase, receive, hold and convey real and personal property for school purposes; to build, equip, purchase and rent schoolhouses and make major repairs thereto and to supply them with fuel, furniture and other appendages and accommodations; to establish and maintain schools of different grades; to establish and

to, but rather consistent with, § 9-206a, and that the adoption of separate budget referenda was authorized by General Statutes §§ 7-194 and 7-198.[8]

The parties stipulated that there were actual, bona fide and substantial questions in dispute regarding the amended charter provisions that presented a live controversy for the trial court's resolution. The trial court, in its memorandum of decision, determined that such bona fide and substantial questions existed. The trial

maintain a school library; to lay taxes and to borrow money for the purposes herein set forth; to make agreements and regulations for the establishing and conducting of schools not inconsistent with the regulations of the town having jurisdiction of the schools in such district; and to employ teachers, in accordance with the provisions of section 10-151, and pay their salaries. When such board appoints a superintendent, such superintendent may, with the approval of such board, employ the teachers."

[8] General Statutes § 7-194 provides: "Subject to the provisions of section 7-192, all towns, cities or boroughs which have a charter or which adopt or amend a charter under the provisions of this chapter shall have the following specific powers in addition to all powers granted to towns, cities and boroughs under the constitution and general statutes: To manage, regulate and control the finances and property, real and personal, of the town, city or borough and to regulate and provide for the sale, conveyance, transfer and release of town, city or borough property and to provide for the execution of contracts and evidences of indebtedness issued by the town, city or borough."

General Statutes § 7-198 provides: "Such consolidation commission shall prepare a consolidation ordinance in which provision shall be made for the allocation of local governmental functions and services to existing offices, departments, boards, commissions or other agencies of the town, city, borough or other unit of local government; the abolition of unnecessary offices, departments, boards, commissions or other agencies; the definition of areas in which services are to be rendered; the establishment of necessary taxing districts to pay the cost of such services; the distribution of assets and liabilities, and such other matters as are required to effectuate such consolidation, including the necessary revision of the charter of any of the units of local government under consolidation so as to eliminate unnecessary offices, departments, boards, commissions or other agencies or to expand existing offices, departments, boards, commissions or other agencies and so to render such charter effective as the charter of the consolidated municipality; provided the terms of the consolidation ordinance shall not, in terms or effect, impair the contractual obligations of the town, city, borough or other unit of local government."

court also determined that those questions led to uncertainty as to the parties' rights and relations, that the challenge to the charter provisions met the requirement of a true controversy, and that judicial resolution of the matter was proper.

We conclude that the actual controversy recognized by both the parties and the trial court survived the 1998 amendments to the Naugatuck town charter and remains in existence to date. We reach this decision without doing violence to that body of case law, previously referenced, which recognizes that certain acts may intervene while an appeal is pending to render a matter moot. See *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, 202 Conn. 497–98. The 1998 amendments did not, in any way, alter those aspects of §§ 3.18 and 14 of the town charter that were contested by the parties and ruled on by the trial court. The only substantive result of the 1998 amendments was to delete the language present in the 1996 version of § 3.18 that permitted the mayor's *designee* to serve on the board. The parties, however, had stipulated to withdraw any claim regarding that language from the trial court's consideration; only the questions of the legality of the mayor's service on the board and of separate budget referenda were before the trial court. Because the 1998 amendments did not cure the alleged underlying defects with respect to these two provisions, there remains an actual controversy capable of, and requiring, adjudication. See, e.g., *Cheshire Taxpayers' Action Committee, Inc.* v. *Guilford,* 193 Conn. 1, 4 n.7, 474 A.2d 97 (1984) (plaintiff's case not moot because method of budget approval contained in proposed ordinance was not substantially same as method set forth in amended charter).

In addition to the presence of an actual controversy, *Nardini* requires that the interests of the parties be adverse before a matter is justiciable. *State* v. *Nardini,* supra, 187 Conn. 112. The requirement of adversity

"ensure[s] that . . . judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." *Maloney* v. *Pac*, 183 Conn. 313, 320, 439 A.2d 349 (1981). As previously discussed, both parties disagree regarding the substantive legality of §§ 3.18 and 14 of the charter since their amendment in 1996. Because the 1998 amendments are, with respect to the challenged provisions, virtually identical to those enacted in 1996, the interests of the parties with respect to the challenged provisions are unchanged and remain adverse.

The third requirement for justiciability under *Nardini* is that the matter in controversy be capable of resolution by judicial authority. *State* v. *Nardini*, supra, 187 Conn. 112. Satisfaction of this prong of the *Nardini* test often turns on whether the issue presented is properly characterized as a "political question" that falls within the exclusive province of the legislature. See, e.g., *Nielsen* v. *State*, 236 Conn. 1, 7, 670 A.2d 1288 (1996). Where adjudication of the matter would tend to violate the doctrine of separation of powers, it is deemed political in nature and the court should abstain from its resolution. Id. We have stated that "[w]hether a controversy so directly implicates the primary authority of the legislative or executive branch, such that a court is not the proper forum for its resolution, is a determination that must be made on a case-by-case inquiry." (Internal quotation marks omitted.) Id. Characteristics of a political question have been found to include "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving [the issue]; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;

or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question." (Internal quotation marks omitted.) Id.

We conclude that the substantive validity of the disputed Naugatuck charter provisions is a matter capable of judicial resolution. There is no exclusive grant of authority to the municipality that would preclude the court from determining whether §§ 3.18 and 14 of the town charter are illegal as enacted. In deciding the merits of this case, the court simply would be called on to perform one of its most basic and routine functions: statutory interpretation. See *Flewellyn* v. *Hempstead*, 47 Conn. App. 348, 350, 703 A.2d 1177 (1997) (where "the controversy raises issues of . . . statutory interpretation of the kind regularly entertained by courts," it may not present political question [internal quotation marks omitted]). Furthermore, the standards by which the legality of the charter provisions are to be measured are concrete, straightforward and grounded in our state law, and, as previously stated, an actual controversy exists that demands resolution. As a result, this case is ripe for adjudication. In reaching this conclusion, we are sensitive to the fact that the charter provisions, as enacted, represent the popular will of the Naugatuck electorate and thus directly implicate the political and legislative process. We have never recognized connection to the political sphere, however, as an independent basis for characterizing an issue as a "political question"; *Nielsen* v. *Kezer*, 232 Conn. 65, 77 n.19, 652 A.2d 1013 (1995); and we decline to do so in the present case.

The fourth prong of the *Nardini* test asks whether the court is capable of granting the plaintiff any practical relief. *State* v. *Nardini*, supra, 187 Conn. 112. Typically, inquiry into that aspect of justiciability is considered in conjunction with the first *Nardini* factor,

the existence of an actual controversy. As a general rule, we have held that where the underlying dispute has not been resolved, the court is capable of affording the plaintiff relief. See *Waterbury Hospital* v. *Connecticut Health Care Associates*, 186 Conn. 247, 251, 440 A.2d 310 (1982) (where complained of conditions no longer exist, injunctive relief no longer appropriate and court cannot fashion remedy); *Connecticut Natural Gas Corp.* v. *Dept. of Consumer Protection*, 43 Conn. App. 196, 203–204, 682 A.2d 547, cert. denied, 239 Conn. 938, 684 A.2d 707 (1996) (where passage of public act did not settle parties' differences, court could grant practical relief).

There remains a controversy in the present case over whether the mayor legally may serve on the board, and whether the town legally may have separate referenda on the board and town budgets. Furthermore, in its initial complaint, the board sought declaratory relief invalidating §§ 3.18 and 14 of the town charter and requested that the court order those provisions reinstated as they existed prior to the 1996 amendments. On appeal to this court, the board again has enunciated a specific remedy: reversal of the Appellate Court's decision and reinstatement of the defendants' appeal. Because a controversy regarding the charter provisions remains in effect, and because the board has articulated a request for specific relief, we conclude that the trial court was able to afford practical relief in this case.

We disagree, therefore, with the conclusions of the Appellate Court that: (1) consideration of the merits was mooted by the passage of the 1998 amendments to §§ 3.18 and 14 of the town charter; and (2) the trial court improperly ruled on a hypothetical question in considering the validity of § 3.18 of the charter in the absence of the language pertaining to service of the mayor's "designee" on the board. *Board of Education* v. *Naugatuck*, supra, 58 Conn. App. 638–40. With respect

to the first conclusion, we have rejected the general proposition that "a case must be dismissed as moot when the statute involved in the litigation is amended or a new statute is enacted." *Hilton* v. *New Haven*, 233 Conn. 701, 726, 661 A.2d 973 (1995). The crucial inquiry under *Hilton* is whether the court may still grant practical postamendment relief. Id. That the new ordinance differs from the old ordinance in certain respects does not, in and of itself, moot consideration of the original ordinance. *Northeastern Florida Chapter of the Associated General Contractors of America* v. *Jacksonville*, 508 U.S. 656, 662, 113 S. Ct. 2297, 124 L. Ed. 2d 586 (1993). Nor will a subsequent amendment that "alter[s] the law in some insignificant respect." (Internal quotation marks omitted.) Id., 670 (O'Connor, J., dissenting). Rather, where a substantive controversy continues to persist even after amendment of a statute, the controversy is not moot and remains justiciable. *Sable Communications of California, Inc.* v. *Federal Communications Commission*, 492 U.S. 115, 131, 109 S. Ct. 2829, 106 L. Ed. 2d 93 (1989) (where contested, substantive statutory prohibitions against obscene commercial telephone messages remained same under subsequent amendment, case not moot); *Heckler* v. *Mathews*, 465 U.S. 728, 733 n.3, 104 S. Ct. 1387, 79 L. Ed. 2d 646 (1984) (because Congress' amendment to pension offset provision did not affect central dispute, case justiciable); *Brockington* v. *Rhodes*, 396 U.S. 41, 42, 90 S. Ct. 206, 24 L. Ed. 2d 209 (1969) (where party argued unconstitutionality of any percentage requirement for voter's signatures in excess of 1 percent, amendment reducing necessary percentage from 7 percent to 4 percent did not render case moot); *Panama Refining Co.* v. *Ryan*, 293 U.S. 388, 413–14, 55 S. Ct. 241, 79 L. Ed. 446 (1935) (action to enjoin enforcement of executive regulations was not made moot by amendments of regulations, adopted pending litigation, which

continue in force requirements complained of and presented same question as before); cf. *St. Pierre* v. *Solnit*, 233 Conn. 398, 398–99, 658 A.2d 977 (1995) (where challenged departmental policy amended to grant complainants substantive relief sought, action rendered moot); *Roy* v. *Mulcahy*, 161 Conn. 324, 327–28, 288 A.2d 64 (1971) (dispute regarding legality of statute providing that only corporals could take examination for state police sergeant rendered moot after amendment that eliminated reference to rank; because provision substantively revised to eliminate controversy, regulation "as it existed prior to the amendment . . . [was] of no further force and effect"). We conclude that the substantive questions regarding §§ 3.18 and 14 of the town charter survived the 1998 amendments. Because the challenged portions of those provisions, as amended in 1996, were unchanged by the 1998 ordinance, the dispute regarding their legality remains justiciable.

The Appellate Court also concluded that, because the trial court failed to consider whether the mayor's designee could serve on the board, the legality of § 3.18 of the town charter presented an academic question rather than an actual controversy. *Board of Education* v. *Naugatuck*, supra, 58 Conn. App. 639–40. The Appellate Court reasoned that, in ruling on the membership amendment without consideration of the " 'or designee' " language, the trial court improperly considered a hypothetical, rather than existing, act. Id. We disagree.

The board's complaint initially questioned whether the mayor's designee lawfully could serve on the board. The board specifically abandoned this claim, however, upon the defendants' representation that they would resubmit § 3.18 of the town charter to the electorate without the "offending language." In the present case, neither party raised the merits of whether the mayor's designee could serve on the board in its motion to dismiss. In fact, the board even acknowledged, in its

brief to the trial court, that "since the defendants are currently in the process of rectifying [the] deficiency with a new charter revision eliminating the ability of a designee to serve on the [b]oard, the [board] does not raise this defect to the court in the instant motion for partial summary judgment." These facts persuade us that any claim regarding this particular portion of § 3.18 was abandoned by the parties and properly removed from the trial court's consideration.

Even more persuasive is the parties' agreement that the language pertaining to service of the mayor's designee on the board was invalid and should be removed, an agreement that was incorporated into the stipulations presented to the trial court. Because both the board and the defendants concurred regarding this issue and, essentially, resolved the matter of their own accord, the validity of that provision no longer presented an actual controversy capable of judicial resolution. Accordingly, we conclude that the validity of § 3.18 of the town charter was not an academic question, but rather an actual controversy that the trial court was correct in resolving.

The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings according to law.

In this opinion the other justices concurred.